2006 OK 100

**June C. MAY, M.D., Plaintiff/Appellant,**

**v.**

**MID–CENTURY INSURANCE COMPANY, a member of the Farmers Insurance Group of Companies, Defendant/Appellee,**

and

**Ray's Sewer Service, Inc., and The Waterford Homeowners Association, Inc., an Oklahoma nonprofit corporation, Defendants,**

**v.**

**Ray's Sewer Service, Inc., and Sine Construction, LLP, Third–Party Defendants.**

No. 101,565.

Supreme Court of Oklahoma.

Dec. 19, 2006.

Derek K. Burch, James A. Scimeca, Burch & George, P.C., Oklahoma City, OK, for Appellant.

Eric S. Eissenstat, Lance E. Leffel, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for Appellee.

Rex Travis, Paul D. Kouri, Oklahoma City, OK, for Amicus Curiae, Oklahoma Trial Lawyers Association.[1]

OPALA, J.

¶1 The dispositive issue on certiorari is whether the plaintiff (condominium unit owner) has a claim against the condominium association's insurer whose policy was issued to the (condominium owners') association. We answer in the negative and hold that the trial court's dismissal of the claim is error-free.

# I

## THE ANATOMY OF LITIGATION

¶2 The plaintiff, Dr. June C. May (Owner), brought a claim against the Waterford Homeowners Association (condominium owners' association hereafter called Association), Ray's Sewer Service, Inc., and Mid–Century Insurance Company (Insurer) for acts or omissions arising out of a 12 November 2001 fire at the Waterford *condominia*. Owner alleges she owns an individual condominium unit that was substantially damaged by the fire. She initially sued the Association on 15 November 2002 for breach of its fiduciary duty to assure the timely repair and replacement of her damaged property.[2] In an amended petition filed 16 March 2004 **she also sued** (a) Ray's Sewer Service for negligently causing the fire that damaged her unit and (b) Insurer for its tortious bad-faith refusal to pay her the benefits due under Insurer's policy issued to Association.

¶3 According to Owner's petition, the insurance policy covered her individual unit (and all improvements to it), including property loss and damage caused by the fire. Owner claims Insurer breached its duty to deal fairly and act in good faith (a) by wrongly failing to pay benefits to which she is entitled under the policy and (b) by seeking recovery of expended indemnity (under the policy) through a subrogation action and settling that case without her knowledge and consent, thereby destroying her right of recovery for damages sustained in the fire directly against the negligent party.

¶4 Insurer moved to dismiss the action on the ground that the petition failed to state a claim upon which relief may be granted as well as because it was barred by the statute of limitations. According to Insurer, Owner

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. Owner alleges Association's "organization documents" impose on its board of directors a duty to act in a fiduciary capacity for all the unit owners by procuring insurance coverage, overseeing the contract reconstruction and assuring the work is done according to certain standards. Owner asserts that Association breached its fiduciary duty to her. Owner relies on the Association's Articles of Incorporation, Bylaws, Declaration of Unit Ownership, and Administration Rules and Regulations.

is neither a named insured under the policy nor is identified therein as an additional insured. She stands as a stranger to the insurance contract and has no standing to bring a bad-faith tort claim. Insurer asserts that by the terms of the policy all benefits must be paid (and were paid) to the Association.

¶ 5 Owner countered that she is a third-party beneficiary of the coverage provided for her condominium unit. She rests her claim for relief on three factors—she paid a portion of the premiums used to maintain the policy in force; the policy was intended to insure against damage to (or loss of) property owned solely by her; and the policy allows Insurer to adjust her loss and to pay policy benefits directly to her. She also argued that Insurer utterly failed to show how her claim stood barred by the statute of limitations.

¶ 6 The trial court dismissed with prejudice Owner's action against Insurer for failure to state a claim upon which relief may be granted. It rejected Insurer's statute-of-limitations defense and concluded that (a) Association is the sole insured under the terms of the insurance policy and (b) under the policy's provisions Owner is neither an insured nor a third-party beneficiary with standing to bring a claim against Insurer for breach of the duty of good faith and fair dealing.[3] Owner brought an appeal from the trial court's dismissal order.[4]

¶ 7 The Court of Civil Appeals (COCA) affirmed the trial court's dismissal of Owner's tort claim against Insurer for breach of its duty to deal fairly and act in good faith. According to COCA, Owner is precluded as a matter of law from recovering against Insurer on her bad-faith claim because she has not shown that any statutory or contractual relationship was in existence between her and Insurer which could give rise to tort liability.[5]

¶ 8 Every trial judge's decision comes to a court of review clothed with a presumption of correctness.[6] Today we affirm the trial court's dismissal order on a theory different from that on which it was rested by the courts below. Although we let the nisi prius dismissal stand, we need not re-examine that decision here by applying exactly the same analysis as that which was used by the trial court. When supported by the record, a

3. The trial court's dismissal order, entered 22 November 2004, states in pertinent part:

Mid-Century's Motion to Dismiss is overruled with respect to the defense of the statute of limitations. Specifically, the Court finds that The **Waterford Homeowners Association, Inc. is the sole insured** and **Plaintiff is neither an insured under the terms of the subject insurance policy nor is she a third-party beneficiary under that policy so as to bring a claim for the breach of the duty of good faith and fair dealing against Mid-Century.**
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant Mid-Century Insurance Company is SUSTAINED, and Plaintiff's Amended Petition as against Mid-Century only is dismissed with prejudice.
THE COURT FURTHER FINDS pursuant to 12 O.S. § 994, that there is no just reason for delay and that the dismissal with prejudice shall constitute the filing of a final judgment, decree or final order for purposes of appeal. (emphasis added).

4. Owner's appeal is prosecuted from the dismissal order certified under the terms of 12 O.S.2001 § 994 for immediate review in advance of judgment upon all claims pressed in the action. The pertinent provisions of § 994(A) are:

A. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order
See in this connection May–Li Barki, M.D., Inc. v. Liberty Bank and Trust Co., 1999 OK 87, ¶¶ 3–4, 20 P.3d 135, 142–43 (Supplemental Opinion on Rehearing); Nestle Food Co. v. Crews, 2000 OK 58, ¶ 2 n. 2, ¶ 6 n. 12, 11 P.3d 205, 207, 208; LCR, Inc. v. Linwood Properties, 1996 OK 73, ¶ 12, 918 P.2d 1388, 1393–94.

5. COCA's pronouncement rests upon the teachings of Rednour v. JC & P Partnership, 2000 OK CIV APP 10, 996 P.2d 487; Anderson v. American Intern. Specialty Lines Ins. Co., 2001 OK CIV APP 141, 38 P.3d 240; Keel v. Titan Const. Corp., 1981 OK 148, ¶ 5, 639 P.2d 1228, 1231; Gianfillippo v. Northland Cas. Co., 1993 OK 125, 861 P.2d 308; Adelman v. Associated Intern. Ins. Co., 90 Cal.App.4th 352, 108 Cal.Rptr.2d 788 (2001).

6. Akin v. Missouri Pacific R. Co., 1998 OK 102, ¶ 35, 977 P.2d 1040, 1054.

legally correct trial-court decision must be affirmed although it was anchored to a theory different from that on which it comes to be tested in appellate review.[7]

¶ 9 Although the conclusion we reach today is the same as that drawn by COCA, we granted certiorari to settle the law applicable to the case by crafting a precedential pronouncement.

## II

### STANDARD OF REVIEW

¶ 10 In reviewing a nisi prius disposition by dismissal, this court examines the issues *de novo*.[8] Motions to dismiss are generally viewed with disfavor.[9] The purpose of a motion to dismiss is to test the law that governs the claim (in litigation), not the underlying facts.[10] A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief.[11] The court, when considering a defendant's quest for dismissal, must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them.[12] A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he may be entitled.[13] If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied.[14] A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory.[15] Our recapitulation of the appellate standards for reviewing dismissals of claims will (and must) guide our decision in this case.

## III

### THE PARTIES' ARGUMENTS ON CERTIORARI

¶ 11 Owner contends COCA erred in rely-

**7.** *Akin v. Missouri Pacific R. Co., supra* note 6, at ¶ 35, 977 P.2d at 1054; *Bivins v. State ex rel. Oklahoma Memorial Hosp.*, 1996 OK 5, ¶ 22 n. 40, 917 P.2d 456, 465; *Matter of Estate of Maheras*, 1995 OK 40, ¶ 7 n. 6, 897 P.2d 268, 272; *Wright v. Grove Sun Newspaper Co., Inc.*, 1994 OK 37, ¶ 18, 873 P.2d 983, 992.

**8.** *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077; *Washington v. State ex rel. Dept. of Corrections*, 1996 OK 139, ¶ 7, 915 P.2d 359, 361; *Indiana Nat. Bank v. State Dept. of Human Services*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375.

**9.** *Lockhart v. Loosen, supra* note 8, at ¶ 5, at 1078; *Indiana Nat. Bank v. State Dept. of Human Services, supra* note 8, at ¶ 4, at 375; *Kentucky Cent. Life Ins. Co. v. LeDuc*, 814 F.Supp. 832, 835 (N.D.Cal.1992).

**10.** *Zaharias v. Gammill*, 1992 OK 149, ¶ 6, 844 P.2d 137, 138.

**11.** *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Ass'n*, 1997 OK 37, ¶ 9, 936 P.2d 916, 922; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 9, 946 P.2d 662, 665; *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 3, 913 P.2d 1318, 1320; *Washington v. State ex rel. Dept. of Corrections, supra* note 8, at ¶ 7, at 361. The terms of 12 O.S.2001 § 2012(B) provide in pertinent part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

\* \* \*

6. Failure to state a claim upon which relief can be granted;

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Groce v. Foster*, 1994 OK 88, ¶ 12, 880 P.2d 902, 906; *Dyke v. Saint Francis Hosp., Inc.*, 1993 OK 114, ¶ 7, 861 P.2d 295, 298. According to Committee Comment to 12 O.S.2001 § 2012(B), the text of § 2012(B) is virtually the same as Federal Rule of Civil Procedure 12(b).

**12.** *Great Plains Federal Sav. and Loan Ass'n v. Dabney*, 1993 OK 4, ¶ 2 n. 3, 846 P.2d 1088, 1090.

**13.** *Id.*, at ¶ 3, at 1096 (Opala, J., concurring).

**14.** *Lockhart v. Loosen, supra* note 8, at ¶ 4, at 1077; *Indiana Nat. Bank v. State Dept. of Human Services, supra* note 8, at ¶ 4, at 376.

**15.** *Lockhart v. Loosen, supra* note 8, at ¶ 5, at 1078; *Indiana Nat. Bank v. State Dept. of Human Services, supra* note 8, at ¶ 4, at 375; *Kentucky Cent. Life Ins. Co. v. LeDuc, supra* note 9, at 835.

ing on *Rednour v. JC & P Partnership*[16] and *Anderson v. American Intern. Specialty Lines Ins. Co.*[17] for its analysis that she is not a third-party beneficiary of the condominium policy.[18] She claims these cases are distinguishable in that they both deal with premises liability policies and the benefits thereunder were claimed by injured persons who might be able to assert liability claims against the insured[19] Owner asserts Association purchased a property damage policy (rather than one for protection from liability) which insures the property of both the Association and the individual condominium owners. She claims the primary purpose of Association's policy is to protect all of the condominium property units regardless of

16. *Supra* note 5

17. *Supra* note 5

18. The pertinent policy provisions are:

**COMMON POLICY DECLARATIONS**
CONDOMINIUM—PREMIER
1. Named Insured—WATERFORD HOMEOWNERS ASSOCIATION INC
**Endorsement E3422**
**CONDOMINIUM PROPERTY COVERAGE FORM**
* * * Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.* * *
**A. COVERAGE (INCLUDES RESTRICTIONS OR ABRIDGEMENTS)**
We will pay for direct physical loss of or damage to covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
**1. COVERED PROPERTY (INCLUDES RESTRICTIONS OR ABRIDGEMENTS)**
Covered Property, as used in this policy, means the type of property as described in this section, A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property. * * *
**E. PROPERTY LOSS CONDITIONS (INCLUDES RESTRICTIONS OR ABRIDGEMENTS)**
* * *
**5. Loss Payment**
In the event of loss or damage covered by this policy:
a. **At our option, we will either:**
(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property;
(3) Take all or any part of the property at an agreed or appraised value; or
(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to d.(1)(e) below.
* * *
c. We will not pay you more than your financial interest in the Covered Property.
d. Except as provided in (2) through (8) below, we will determine the value of Covered Property as follows: * * *
(5) Tenants' Improvements and Betterments at:
(a) Replacement cost if you make repairs promptly.
(b) a proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:
* * *
e. Our payment for loss of or damage **to personal property of others will only be for the account of the owners of the property. We may adjust losses** with the owners of lost or damaged property if other than you. **If we pay the owners,** such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the covered Property.
(emphasis in original and added)
**Endorsement E3418**
Item a. under **A. 2. Property Not Covered** in the CONDOMINIUM PROPERTY COVERAGE FORM is deleted in its entirety. **Item A.1.a. (6) under 1.** Covered Property is added as follows:
(6) Any of the following types of property contained within a unit regardless of ownership are covered whether or not your Condominium Association Agreement requires you to insure it subject to the Limit of Insurance shown in the Declarations for Buildings:
(a) Fixtures, improvements and alterations that are a part of the building or structure; and
(b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping. * * *
(emphasis in original)
**Endorsement E3024**
* * * **K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO U.S. (INCLUDES RESTRICTIONS OR ABRIDGMENTS)**
1. Applicable to condominium Property Coverage:
If any person or organization to or for whom we make payment under this policy has rights to recover damages from others, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. * * *
(emphasis in original)

19. According to Owner the primary purpose of the medical-payment policies in *Anderson* and *Rednour, supra* note 5, is to protect the insured's assets by lessening the likelihood that damage claims would be asserted against the insured.

ownership. According to Owner, Association holds the insurance policy as trustee for the benefit of all the unit owners.[20]

¶ 12 Owner points out that another factor distinguishes this case from those of *Rednour* and *Anderson*. Insurer here brought a subrogation claim against the party that caused the fire and in it asserted claims belonging to Owner.[21] Owner informs us that Insurer settled its subrogation claims without ever giving her notice of the lawsuit and obtaining her consent.[22] According to Owner, if the policy does allow Insurer to pursue a lawsuit in her name she has standing in law as an express third-party beneficiary of the insurance policy to bring a bad-faith tort claim against the Insurer.[23]

¶ 13 Owner claims a policy endorsement known as E3418 [24] covered her property and allowed (if not required) the Insurer to make payment to her for the losses she sustained. According to Owner, this endorsement not only provides coverage for damage to various fixtures, improvements and alterations which were a part of the building structure within

her condominium unit, but she was also an intended third-party beneficiary of that coverage. She claims that because the demonstrated indicia of her status *qua* third-party beneficiary of the policy are clear, COCA erroneously affirmed her claim's dismissal.

¶ 14 Insurer counters that Association purchased a common condominium policy as the sole named insured, while Owner secured no insurance of her own.[25] According to Insurer the insured structure in controversy here is part of the common structure for which Association is responsible. In contrast, Insurer claims Owner's sole responsibility is the airspace and personal property within her unit. Insurer asserts Owner is seeking to extend the breadth of Association's insurance policy's coverage to coincide with that of a unit policy she chose not to purchase.

¶ 15 Insurer claims the plain language of the policy, viewed in its totality, shows the contracting parties' primary purpose was to protect the interests and property of the named insured (Association).[26] According to

---

**20.** Owner relies on Article X of the Association's Declaration of Ownership. Its pertinent provisions are:

ARTICLE X
INSURANCE
* * *

2. *Fire and Extended Coverage Insurance.* A blanket fire and hazard insurance policy shall be purchased by the Association and shall be maintained in force at all times, the premium thereon to be paid from the assessments levied against each of the Unit Owners in accordance with this Declaration. Such insurance ... shall insure all structures and improvements upon the Property and all personal property owned by the Association or jointly by all the Unit Owners as tenants in common for not less than one hundred percent (100%) of the full insurable replacement cost value thereof (as determined annually by the Board in conjunction with the insurance company issuing such policy).... Such policy shall name the Association as insured, as trustee for the benefit of all the Unit Owners....

Owner claims that she was required by the declaration to pay her assessed share of the premium for the fire and extended coverage insurance

**21.** The condominium policy (endorsement E3024, *supra* note 18) gives Insurer the right to pursue a subrogation claim in the name of any person "... to or for whom we make payment under this policy...."

**22.** Owner claims Insurer destroyed her right to recover (from a third-party tortfeasor) damages

which the Insurer either refused to pay or which were not covered under the policy.

**23.** Owner challenges COCA's reliance on *Adelman v. Associated Intern. Ins. Co.*, *supra* note 5. She claims the California case is distinguishable because (a) in *Adelman* the individual owner's interests were not covered by the condominium policy provisions, whereas here a policy endorsement (E3418) covers the property she owns and (b) the damages in *Adelman* were to the common areas of the complex, not, as here, to individual units. Owner claims the facts in her case are more akin to those in *Stefano v. Commodore Cove East Ltd.*, 145 Ohio App.3d 290, 762 N.E.2d 1023 (2001), which holds a condominium unit owner has standing to assert a claim under an insurance policy issued to a condominium association.

**24.** For the terms of E3418, see *supra* note 18

**25.** The terms of 60 O.S.2001 § 526 provide in pertinent part:

The unit owners may, upon resolution of a majority, insure the property against risks, **without prejudice to the right of each unit owner to insure his unit on his own account and for his own benefit**.....
(emphasis added).

**26.** In support of Insurer's position, we are directed to various policy provisions that allow coverage (a) for shared buildings, structures and fix-

Insurer, endorsement E3418 [27] does not alter or widen that object. The intent of E3418, Insurer asserts, is to extend the Association's coverage to property where a certain fixture or appliance is a part of the common structure and is therefore the Association's responsibility.

¶ 16 Insurer claims that rather than expressly conferring a benefit, E3418 merely recognizes that property covered thereunder may be owned by individual unit owners rather than Association. According to Insurer, any benefit to Owner which may be conferred by the endorsement is incidental to the policy's primary purpose and hence is insufficient to confer standing upon her to sue Insurer for breach of the implied duty of good faith and fair dealing.

¶ 17 Insurer argues that to confer standing to sue an insurer in tort for breach of an implied duty of good faith and fair dealing there must be either a statutory or contractual basis. One's mere entitlement to benefits paid to the insured, Insurer claims, is not sufficient to confer standing.[28] Insurer asserts COCA applied the correct analytical framework for determining Owner's lack of standing to bring a bad-faith claim.

¶ 18 In response to Owner's argument that Insurer had pursued a subrogation claim on her behalf against the tortfeasor, Insurer informs us that no such claim was in fact made. Insurer assures us that it pursued a subrogation action solely in the name of the named insured (Association).

tures, (b) for Association's accounts receivable, acts of dishonesty by Association employees, business property and electronically stored data used and controlled solely by Association, (c) for directors and officers liability, (d) for condominium association fees which Association is unable to recover from unit owners whose units are rendered uninhabitable by direct physical loss covered by the policy, (e) for "extra expense," including expenses incurred by Association to prevent business interruption in the event of loss; (f) for loss caused by the breakdown of equipment owned and maintained by Association, and (g) for bodily injury or property damage arising from the maintenance or use of a hired automobile used by the Association or its employees.

27. For the terms of E3418, see *supra* note 18

¶ 19 Although neither the insurance policy here in suit nor the declaration of ownership was affixed to the second amended petition below, the insurance policy was submitted as part of the Insurer's dismissal quest and the pertinent declaration provisions were affixed to Owner's response. They stand hence tendered for our consideration here.[29] The parties must be deemed to have adopted these documents as fit and proper for our analysis in entertaining this cause.[30]

## IV

## UNIT OWNER'S CLAIM

¶ 20 Owner's bad-faith tort claim against Insurer rests on her asserted status as an intended third-party beneficiary for losses defined by the condominium policy. The motion to dismiss was brought to test whether Owner had a legal claim based on Insurer's breach of any duty owed her under the policy.

¶ 21 In this appeal our concern is solely with the Insurer's liability to the condominium unit owner. We make no reference to Owner's claim against Association. The rights and duties, if any, owed by Association to unit owners are clearly not at issue before us. Today's opinion stands confined solely to the rights between Owner and Insurer *inter se.*

28. *Roach v. Atlas Life Ins. Co.,* 1989 OK 27, ¶ 8, 769 P.2d 158, 161.

29. For the pertinent provisions of Association's condominium insurance policy and Declaration of Ownership, see *supra* notes 18 and 20.

30. When a plaintiff fails to attach to the complaint (or incorporate by reference) a pertinent document upon which it solely relies and which is integral to the complaint (or referred to in the complaint), a defendant may introduce the document as part of its motion attacking the pleading. The submission of the exhibit is not considered a reliance on extraneous materials so as to require the recasting of the dismissal motion into one for summary judgment. *Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, ¶ 4 n. 10, 958 P.2d 128, 136.

## A.

### The Provisions of the Policy Give Owner No Enforceable Contractual Rights To Any Indemnity That May Be Due for A Covered Property Loss

¶ 22 To ascertain the nature of Insurer's contractual obligations to Owner, if any, we must examine the provisions of the policy. An insurance policy is a contract.[31] The rules of construction and analysis applicable to contracts govern equally insurance policies.[32] The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made.[33] In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning.[34] Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect.[35] A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.[36] We review the meaning assigned by the trial court to a contract as a legal question.[37] Questions of law are reviewed by a *de novo* standard.

¶ 23 Association is the sole named insured upon the condominium insurance policy issued by Insurer. The terms of the endorsement known as **E3418** provide coverage for certain types of property that may belong to third-party unit owners—*i.e.*, fixtures, improvements, and alterations that are a part of the building or structure as well as appliances.[38] The loss payment provisions of endorsement E3422[39] give Insurer the **exclusive choice** to settle covered losses **directly with** the unit owners **or with** Association "for the account" of the unit owners.

¶ 24 The contract's **expressed intent to confer** solely on Insurer the power to regard all contractual obligations due under the policy as extending to the named insured **specifically negates the existence of any enforceable obligation** in favor of unit owners *qua* third-party beneficiaries. **No obligation may be imposed upon a promissor in favor of a third party if the contract expressly relieves that promissor of such liability to that third party.**[40] It is crystal-

---

**31.** *Branch v. Farmers Ins. Co., Inc.*, 2002 OK 16, 55 P.3d 1023, 1028; *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 10, 812 P.2d 372, 376.

**32.** *Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 1996 OK 28, 912 P.2d 861, 868.

**33.** *Branch v. Farmers Ins. Co., Inc, supra* note 31, at 1028; *Max True Plastering Co. v. U.S. Fidelity and Guar. Co., supra* note 32, at 868. See the terms of 15 O.S.2001 § 152, which provide:

A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful.

**34.** *Max True Plastering Co. v. U.S. Fidelity and Guar. Co., supra* note 32, at ¶ 8, 912 P.2d at 865.

**35.** *Littlefield v. State Farm Fire & Cas. Co.*, 1993 OK 102, ¶ 7, 857 P.2d 65, 69; *Penley v. Gulf Ins. Co.*, 1966 OK 84, ¶ 7, 414 P.2d 305. The terms of 15 O.S.2001 § 154 provide:

The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity.

**36.** *Max True Plastering Co. v. U.S. Fidelity and Guar. Co., supra* note 32; *Phillips v. Estate of Greenfield*, 1993 OK 110, 859 P.2d 1101, 1104. *See* the provisions of 15 O.S.2001 § 159, which state:

A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties.

**37.** *American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, ¶ 11, 89 P.3d 1051; *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 2002 OK 34, ¶ 9, 55 P.3d 1030, 1032; *Torres v. Sentry Ins.*, 1976 OK 195, ¶ 7, 558 P.2d 400; *Wiley v. Travelers Ins. Co.*, 1974 OK 147, ¶ 16, 534 P.2d 1293; *American Iron & Mach. Works Co., Inc. v. Insurance Co. of North America*, 1962 OK 197, ¶ 5, 375 P.2d 873.

**38.** For the provisions of E3418, see *supra* note 18.

**39.** For the pertinent provisions of E3422, see *supra* note 18.

**40.** See in this connection *Volpe Const. Co., Inc. v. The First Nat. Bank of Boston*, 30 Mass.App.Ct. 249, 567 N.E.2d 1244, 1249 (1991)(if two contracting parties expressly provide that a third party who will be benefitted by the contract's performance shall have no legally enforceable right, the courts should effectuate the expressed intent by denying the third party any direct remedy), citing *4 Arthur L. Corbin, Corbin on Contracts* § 777, at 25 (1951); *Hrushka v. State, Dept.*

clear by the terms of the policy in suit that the parties to the policy—Insurer and Association—did not intend to confer on any third-party unit owner a legally enforceable right of recovery against Insurer.

### Third–Party Beneficiary Status

¶ 25 A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promissor and promisee.[41] One to whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary. The express contractual negation of the promissor's duty to the third-party status seeker operates to exclude that third party from legal recognition as third-party promisee.[42]

¶ 26 Evident as it is that under the express terms of the policy in suit **Insurer is not obligated to pay directly to Owner** any part of the indemnity that may be due for the loss she claims to have sustained, it would be indeed utterly pointless to search further for support or abnegation of her third-party beneficiary status. **That status, even if found, would be of no help to her recovery quest. We hence refuse to engage in a vain and useless analytical effort.**

¶ 27 In sum, the policy in suit expressly withholds from Owner any claim to an enforceable obligation against Insurer. The policy's exclusionary provisions specifically bar unit owners from any direct contractual benefit from Insurer. **Owner was hence contractually deprived of any right to assert a bad-faith tort claim against the insurer.**

¶ 28 In the trial court Owner laid no claim to **reformation**[43] or **invalidation**[44] of any exclusionary clauses of the policy which are pertinent to our inquiry. Nor does she here refer to a demand for that relief. We must hence accept the policy's exclusionary clauses as valid. Owner is bound by those policy provisions. They prevent her from laying a direct claim against Insurer.

### Owner's Lack of Financial– Interest Theory

¶ 29 Owner contends Association has no financial interest in her separate property and is hence not entitled to indemnity for the loss of covered property owned by her. She directs us to policy language which states that Insurer will not pay Association more than its "financial interest" in the insured property.[45] We find no conflict between this provision and the policy clause that allows Insurer to pay Association directly for the covered loss of a unit owner's property. In the latter case, Association **would receive those funds for the benefit of the unit**

*of Public Works and Highways*, 117 N.H. 1022, 381 A.2d 326, 327 (1977) (citing *Knapp v. New Haven Road Const. Co.*, 150 Conn. 321, 189 A.2d 386 (1963); *Nepco Forged Products., Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984); *Cobos v. Dona Ana County Housing Authority*, 121 N.M. 20, 908 P.2d 250, 255 (App.1995)).

41. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436, 442 (1996); *Haas v. DaimlerChrysler Corp.*, 611 N.W.2d 382, 385 (Minn.App.2000); *Brix. v. General Acc. & Assur. Corp.*, 254 Minn. 21, 93 N.W.2d 542, 544 (1958); Restatement (Second) of Contracts § 309 cmt. b (1981) (**a third-party beneficiary's rights are subject to limitations in the contract**).

42. *Id.*

43. An insurance policy, like any other contract, can be reformed. *Hoar v. Aetna Cas. and Sur. Co.*, 1998 OK 95, ¶ 17, 968 P.2d 1219, 1223; *U.S.*

*Fidelity & Guaranty Co. v. Webb*, 1970 OK 214, ¶ 11, 477 P.2d 392, 394–95. When clear and convincing evidence is presented reformation of a contract is permitted to reflect the understanding of the parties in situations where there is fraud, accident or mutual mistake. *Cleary Petroleum Corp. v. Harrison*, 1980 OK 188, ¶ 11, 621 P.2d 528, 532; *Haggard v. Calhoun*, 1956 OK 62, ¶ 17, 294 P.2d 836. In *U.S. Fidelity & Guaranty Co. v. Webb*, *supra* at 394–95, persons not parties to the contract were permitted to obtain reformation of an insurance contract when it was shown that the parties intended for these persons to be beneficiaries.

44. *Thomas v. National Auto. and Cas. Ins. Co.*, 1994 OK 52, 875 P.2d 424, 427–28; *Nation v. State Farm Ins. Co.*, 1994 OK 54, 880 P.2d 877 (the household exclusion clause was invalidated as violative of the legislature's mandate for compulsory liability insurance).

45. See the pertinent provisions of E3422, *supra* note 18.

owner rather than as indemnity for some covered losses of its own.

### Owner's Subrogation Theory

¶ 30 Owner contends that if the policy allows Insurer to bring a subrogation claim in her name, she has standing as an express third-party beneficiary of the policy to bring a bad-faith claim against Insurer.

¶ 31 This argument is of no avail here. Under the policy in suit Insurer owes no duty of any kind to Owner. Insurer's claim against a third-party tortfeasor would neither create a contractual duty in favor of Owner nor invest her with a right to claim against Insurer.

## V

### SUMMARY

¶ 32 The condominium policy in suit gives only to the Insurer the power to choose whether to settle for covered losses with the insured or with the third-party unit owner. Because the policy's exclusionary provisions expressly negate the existence of an insurer's contractual duty to pay directly to Owner, Insurer is not contractually obligated to indemnify her directly for any losses to her condominium unit.

¶ 33 Owner's status as a third-party beneficiary, even if found, would not be helpful to her recovery in a bad-faith tort claim. This is so because under the policy in suit she has no right to recover against Insurer. In the trial court Owner has not challenged any of the key exclusionary clauses by asserting her own claim for policy reformation or for invalidation of the key offending provisions. She is hence bound by those policy clauses which operate today to defeat her claim for recovery directly from Insurer.

¶ 34 On certiorari granted upon the plaintiff's petition the Court of Civil Appeals' opinion is vacated and the trial court's dismissal order affirmed.

¶ 35 WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, EDMONDSON, and TAYLOR, JJ., concur;

¶ 36 COLBERT, J., concurs in part and dissents in part;

¶ 37 WATT, C.J., dissents;

¶ 38 KAUGER, J., not participating.