STATE ex rel. DOAK v. RED ROCK INSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE ex rel. DOAK v. RED ROCK INSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE ex rel. DOAK v. RED ROCK INSURANCE CO.
2019 OK CIV APP 35
444 P.3d 493
Case Number: 115716
Decided: 12/07/2018
Mandate Issued: 07/03/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 35, 444 P.3d 493

 

STATE OF OKLAHOMA, ex rel. JOHN D. DOAK, Insurance Commissioner, Plaintiff/Appellee,
v.
RED ROCK INSURANCE COMPANY, a licensed insurer in the State of Oklahoma, Respondent/Appellee,
and
THE BANKERS BANK, Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY

HONORABLE THOMAS E. PRINCE, JUDGE

AFFIRMED

Ryan Leonard, Robert Edinger, Jason A. Reese, EDINGER, LEONARD & BLAKLEY, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellee,

Jon Epstein, Tami J. Hines, HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C., Oklahoma City, Oklahoma, for Appellant.

ROBERT D. BELL, PRESIDING JUDGE:

¶1 Appellant, The Bankers Bank, appeals from the trial court's order denying Appellant's proofs of claim in this receivership proceeding to liquidate Respondent, Red Rock Insurance Company. At issue in this proceeding is the interpretation of an insurance contract. For the reasons set forth below, we affirm.

¶2 Appellant is an Oklahoma state banking corporation engaged primarily in the business of making banking and bank-related products and services available to other financial institutions. In 2010, BancInsure, Inc., issued the Extended Professional Liability Policy in question here (Policy) to Bankers Bancorp of Oklahoma, Inc., and certain of its subsidiaries, including Appellant. The Policy provided coverage for, among other things, acts done by Appellant "in the performance of services for or on behalf of a customer." BancInsure later changed its name to Red Rock Insurance Company, Inc.

¶3 LendingTools.com (LT) is a software company that licenses its own banking software systems to financial institutions. In 2010 and 2011, two of LT's customers (UBB and FNBB) chose not to renew their banking software contracts with LT and instead entered into contracts with Appellant. Each of the customers asked Appellant to develop correspondent software systems for them and to customize certain elements of Appellant's software platform.

¶4 In February 2012, Appellant was joined as a co-defendant in a suit filed by LT in Kansas state court. LT's suit alleged Appellant and the Bankers Bank of Kansas (BBOK) entered into a joint venture to develop and sell a banking software product; BBOK executed an agreement with LT that included non-compete and non-disclosure provisions; Appellant and BBOK pursued two of LT's customers (UBB & FNBB) in violation of the non-compete provision; and both UBB and FNBB allowed Appellant and BBOK access to LT's software in violation of the non-disclosure provision. LT sought monetary damages and injunctive relief, asserting claims for breach of contract, tortious interference with contract, misappropriation of trade secrets, civil conspiracy, fraud, and breach of the covenant of good faith and fair dealing.

¶5 In March 2012, Appellant submitted its first claim for coverage to Red Rock in connection with the Kansas litigation. Red Rock denied coverage under the Policy, explaining there were no allegations in the litigation of wrongful acts covered by the Policy. Between July 2012 and January 2014, Appellant renewed its request for coverage multiple times. Each time, Red Rock denied coverage.

¶6 In August 2014, upon application by the Oklahoma Insurance Commissioner and pursuant to the Oklahoma Uniform Insurers Liquidation Act, 36 O.S. 2011 §1901 et seq., Red Rock was placed into liquidation and receivership by the District Court of Oklahoma County. Insurance Commissioner John D. Doak was appointed as Receiver. Thereafter, Appellant filed two proofs of claim with the Receiver in an attempt to recover litigation costs and any potential judgment arising out of the Kansas litigation; the first proof of claim represented any loss payment that may arise from the litigation and the second represented attorney fees and defense costs incurred by Appellant in the litigation.

¶7 The Kansas litigation culminated in 2016 with a jury verdict finding Appellant did not breach any alleged contract with LT and did not misappropriate any of LT's trade secrets. Appellant's first proof of claim in the receivership proceeding was thereafter reduced to $0.00 because no liability in the Kansas litigation was established. The second proof of claim sought $7,262,105.22 for Appellant's attorney fees and defense costs. The Receiver recommended denial of the claims.

¶8 Following a hearing, the trial court denied Appellant's proofs of claim. In an exhaustive ruling, the court held the Policy's "professional services" coverage did not apply because the definition of "professional services" was limited to wrongful acts committed by Appellant "in the performance of services for or on behalf of a customer," not against its competitor. The trial court also rejected Appellant's argument that its alleged conduct fell within the scope of an "electronic banking wrongful act" provision of the Policy, because the electronic system at issue was not owned, licensed by or licensed to Appellant. Finally, although of little consequence because the court held no coverage was available to Appellant, the court rejected the Receiver's argument that the "profit or advantage exclusion" barred any coverage for Appellant. From said judgment, Appellant appeals. Oral argument was held before this Court on August 29, 2018.

¶9 In State ex rel. Fisher v. Heritage Nat'l Ins. Co., 2006 OK CIV APP 119, ¶12, 146 P.3d 815, the Court described litigation brought pursuant to the Insurers Liquidation Act as "a special proceeding in the nature of equity." "Accordingly, the trial court's judgment will be affirmed unless it is against the clear weight of the evidence or is contrary to law or established principles of equity." Id. Further:

An insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties. We review the meaning assigned by the trial court to a contract as a legal question. Questions of law are reviewed by a de novo standard.

May v. Mid-Century Ins. Co., 2006 OK 100, ¶22, 151 P.3d 132 (footnotes omitted). "A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, . . ." Pitman v. Blue Cross and Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000).

¶10 At issue in this case is whether Appellant's acts fall within the Policy's coverage definitions. The Policy covers an insured for any "loss that is the result of a claim for a professional services wrongful act . . . ." The term "professional services wrongful act" is defined by the Policy to mean, inter alia:

any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the company in the performance of services for or on behalf of a customer . . . .

¶11 Appellant argues LT's allegations against it in the Kansas litigation fall squarely within the definition of a "professional services wrongful act" because the allegations charged that Appellant committed wrongful acts "in the performance of services for or on behalf of a customer." Stated otherwise, the Kansas suit alleged Appellant committed wrongful acts against LT while Appellant was developing and customizing banking software systems for two of its customers. Appellant does not challenge the trial court's denial of coverage under the "electronic banking wrongful act" Policy provision.

¶12 Receiver argues the trial court properly denied Appellant's claims because the conduct giving rise to the Kansas litigation was not performed by Appellant "for or on behalf of a customer," but rather was performed by Appellant for its own commercial purpose and business advantage. Receiver contends the alleged conduct was not to the detriment of Appellant's customer, but rather was to the detriment of a competitor, "an entity with whom [Appellant] did not have a professional relationship and for whom it did not provide professional services." Receiver insists the alleged unauthorized use by Appellant of LT's trade secrets and confidential information to develop software "is not a mistake or an error inherent in the banking profession, but rather an intentional act by [Appellant] for its own monetary gain, outside the scope of providing professional banking services." Both parties assert the Policy terms are unambiguous.

¶13 We agree with Receiver and the trial court that the Policy does not provide coverage for Appellant's loss. The clear terms and intent of the Policy is to provide coverage for mistakes or errors inherent in the practice of Appellant's profession of providing bank-related products and services to its banking customers. The acts alleged in the Kansas litigation all relate to Appellant's conduct regarding LT. Those allegations included breach of a purported contract with LT, tortious interference with LT's contracts, misappropriation of LT's trade secrets, civil conspiracy with BBOK against LT, fraud committed against LT, and breach of an alleged covenant with LT to deal fairly and in good faith. Accordingly, we hold the acts Appellant was alleged to have performed in the Kansas litigation were not undertaken "in the performance of services for or on behalf of a customer."

¶14 On the basis of the foregoing, we hold the trial court's ruling is neither against the weight of the evidence nor contrary to law or established principles of equity. It is therefore affirmed.

¶15 AFFIRMED.

JOPLIN, J., concurs.

 BUETTNER, J., dissents.

¶1 I believe the language of the Policy is clear and unambiguous. Assigning the plain and ordinary meaning to the Policy's terms, the Policy provides coverage for Appellant's acts as alleged in the Kansas litigation. Appellant was alleged to have committed wrongful acts while it was developing and customizing banking software systems for two of its customers. The Policy language does not limit coverage to only alleged wrongs committed against a customer, nor does it appear to provide coverage only for unintentional acts. The term "professional services wrongful act" includes "any . . . alleged . . . act . . . by the company in the performance of services for or on behalf of a customer . . ." The alleged wrongful acts by Appellant were "in the performance of services for or on behalf of a customer" within the meaning of the Policy. I would hold that the policy covered the Appellant's claim.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 119, 146 P.3d 815, STATE ex rel. FISHER v. HERITAGE NATIONAL INSURANCE CO.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 1901, Definitions
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA