WAKE v. STATE ex rel. OMES EMPLOYEES GROUP INSUR. DIVISION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WAKE v. STATE ex rel. OMES EMPLOYEES GROUP INSUR. DIVISION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WAKE v. STATE ex rel. OMES EMPLOYEES GROUP INSUR. DIVISION
2019 OK CIV APP 47
Case Number: 116834
Decided: 07/12/2019
Mandate Issued: 08/28/2019
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2019 OK CIV APP 47, __ P.3d __

 

DENISE WAKE, Plaintiff/Appellant,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA OFFICE OF MANAGEMENT AND ENTERPRISE SERVICES EMPLOYEES GROUP INSURANCE DIVISION and PRESTON DOERFLINGER, in his official capacity only as director of OMES, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE THAD BALKMAN, JUDGE

REVERSED AND REMANDED
WITH INSTRUCTIONS

Roy S. Dickinson, ROY S. DICKINSON, P.C., Norman, Oklahoma, for Plaintiff/Appellant,

Byron W. Knox, OMES DEPUTY GENERAL COUNSEL, Oklahoma City, Oklahoma, for Defendants/Appellees.

Bay Mitchell, Presiding Judge:

¶1 Plaintiff/Appellant Denise Wake appeals from the district court's order affirming Defendant/Appellant State of Oklahoma ex rel. Oklahoma Office of Management and Enterprise Services (OMES) Employees Group Insurance Division (EGID) and Preston Doerflinger's final order denying certification for bariatric revision surgery. We find the procedure is a covered service according to the terms of the health insurance policy. We reverse the final agency order and remand to the OMES EGID Grievance Panel with instructions to enter a final order granting certification.

¶2 Wake has suffered from severe obesity her entire adult life. She had bariatric surgery in 1984. At that time, Wake was in college. She had a vertical banded gastroplasty (VBG), also known as stomach stapling. Initially, the procedure was successful and Wake lost significant weight. However, the VBG failed, and she re-gained weight. Wake also experienced other medical issues as a result of the failed VBG, including erosion of the staple lining, severe abdominal pain, frequent nausea and vomiting, gastroesophageal reflux disease (GERD), chronic diarrhea, and food intolerance. VBG was one of the earliest surgical weight loss procedures and popular in the 1980's. It has since fallen into disfavor due to these symptoms and complications and the rise of other more effective procedures. As a result of unsatisfactory long-term weight loss and/or these symptoms and complications, revision surgery is often required. There are several options for revision surgery, including conversion from a VGB to a Roux-en-Y (RNY) gastric bypass.

¶3 Wake started teaching in the Norman Public Schools district and has been covered by the employee benefit HealthChoice Health and Dental Plan (the Plan) since 2012. OMES and EGID sponsor and administer the Plan. A new benefit for bariatric surgery was added to the Plan as of January 1, 2017. Bariatric surgery requires pre-service certification. On January 6, 2017, Wake's doctor submitted a request for certification for conversion of Wake's failed VBG to a RNY gastric bypass. On January 17, 2017, HealthChoice denied certification finding the procedure was not covered by the Plan.[1] The explanation of denial provided: "Gastric surgery done prior to 1/01/2017 therefore not a covered benefit." Wake filed a timely request for a OMES EGID Grievance Panel Hearing. After a hearing June 28, 2017, the Panel issued a final order upholding the denial and concluding "by the greater weight of the evidence that the requested procedure is a complication of a non-covered procedure; therefore, no benefits are available. Administrative Rule: 260:50-5-12(12)(19), Health Handbook: pages 32 #10, #11." Wake then appealed to the district court, where the Panel's final order denying certification was affirmed. Wake appeals.

¶4 The issues on appeal are whether the requested procedure is covered by the Plan and whether any coverage exclusions apply. The facts are not in dispute. These issues concern contract interpretation. An insurance policy is a contract, and the rules of construction apply. See May v. Mid-Century Ins. Co., 2006 OK 100, ¶22, 151 P.3d 132. If unambiguous, the terms and words of the contract must be accepted in their plain, ordinary, and popular sense. See id.; Flitton v. Equity Fire & Cas. Co., 1992 OK 2, ¶7, 824 P.2d 1132, 1134 (citing Wiley v. Travelers Ins. Co., 1974 OK 147, ¶16, 534 P.2d 1293, 1295). "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Wiley, 1974 OK 147, ¶16, 534 P.2d at 1295. Whether contract language is ambiguous is a question of law. See Am. Econ. Ins. Co. v. Bogdahn, 2004 OK 9, ¶11, 89 P.3d 1051. Questions of law are reviewed de novo. See May, 2006 OK 100, ¶22. The appellate court may set aside, modify, or reverse a final agency order if it determines that the substantial rights of the appellant have been prejudiced because the agency findings, inferences, conclusions, or decisions are affected by an error of law. See 75 O.S. 2011 §322(1)(d).

¶5 The Covered Services, Supplies and Equipment section of the policy provides that "Bariatric Surgery" is a covered service. "Bariatric Surgery" is a general term which includes a variety of weight-loss procedures. The policy describes the specific procedures and services covered:

Services covered include, but are not limited to sleeve, bypass, duodenal switch, revision and conversion of sleeve, bypass and duodenal switch, and complications from these procedures performed under the HealthChoice plans.

¶6 Wake argues she is seeking a revision surgery, which is a covered service. OMES argues Wake is requesting a procedure to correct complications from the 1984 surgery and, because the previous bariatric surgery was not performed under a HealthChoice plan, the revision surgery is not covered.

¶7 We find the Covered Services language is not ambiguous. Revision and conversion of sleeve, bypass, and duodenal switch are covered services. Three categories of covered services are contemplated in this provision: (1) original sleeve, bypass, and duodenal switch; (2) revision and conversion of sleeve, bypass, and duodenal switch; and (3) complications from either an original sleeve, bypass, or duodenal switch performed under the HealthChoice plans or a revision and conversion of a sleeve, bypass, or duodenal switch performed under the HealthChoice plans. We agree with Wake that the requested procedure falls into the second category and is covered by the Plan.

¶8 OMES's position that revision and conversion procedures are covered only if the previous bariatric surgery was covered by and performed under a HealthChoice plan on or after January 1, 2017 is problematic. That interpretation would require us to read additional words into the Covered Services provision. The second category of Covered Services does not read "revision and conversion of sleeve, bypass and duodenal switch if the previous or original bariatric surgery was performed under the HealthChoice plans." Additionally, the limiting language "performed under the HealthChoice plans" attaches only to "complications from these procedures" and does not attach to "revision and conversion of sleeve, bypass and duodenal switch." "[R]evision and conversion of sleeve, bypass and duodenal switch" and "complications from these procedures performed under the HealthChoice plans" are separated by a comma and the word "and." Revision and conversion procedures and services addressing complications from procedures performed under the Plan are separate and distinct covered services.

¶9 We now turn to the coverage exclusions in the administrative rules and the policy. The HealthChoice Administrative Rules provide certain limitations and exclusions from coverage. Relevant here is 260:50-5-12(12), which excludes from coverage expenses incurred in connection with "Complications from any non-covered or excluded treatments, items or procedures." The policy contains the same exclusion. Wake argues the requested procedure is not subject to this exclusion. OMES contends the exclusion applies. OMES argues the original bariatric surgery in 1984 was not covered by the Plan and the requested revision surgery is to address complications from that non-covered procedure.

¶10 OMES suggests the intent of the Covered Services provision and the exclusion in the policy and administrative rules was that revision and conversion surgeries are to be considered services addressing "complications." Therefore, if the complications necessitating revision surgery are from a previous bariatric surgery that was not covered by a HealthChoice plan, it comes within this exclusion. If the complications necessitating revision surgery are from a previous bariatric surgery that was covered by a HealthChoice plan on or after January 1, 2017, it does not come within this exclusion and is a covered service. The Grievance Panel agreed, finding Wake's "requested procedure is a complication of a non-covered procedure."

¶11 The problem with this interpretation is it completely disregards the plain language of the Covered Services provision. The intention of the parties must be determined by the four-corners of the contract. See 15 O.S. 2001 §§154 and 155; Mercury Inv. Co. v. F.W. Woolworth Co., 1985 OK 38, ¶9, 706 P.2d 523, 529. If the intent was that "complications" encompass every revision and conversion procedure, that should have been articulated in the four corners of the policy.[2] Common sense provides all revision and conversion procedures, by definition, are made necessary by complications from a previous bariatric surgery. If the original bariatric surgery is satisfactory and has not caused complications, there would be no reason for a revision surgery. As discussed above, the Covered Services provision separates revision and conversion procedures from services to address complications from procedures performed under the Plan. If the intent was to include revision and conversion procedures within the meaning of services for "complications" there would be no need to separately state that "revision and conversion of sleeve, bypass and duodenal switch" are Covered Services.

¶12 We find the policy excludes coverage for complications from non-covered bariatric procedures, generally, but it does not exclude revision and conversion of non-covered bariatric procedures, as described in the Covered Services provision. By specifically identifying revision and conversion of sleeve, bypass, and duodenal switch as Covered Services, the policy distinguishes these procedures from other services to address complications from non-covered procedures. If the intent is to exclude revision and conversion surgery if the previous bariatric procedure was not covered by and performed under a HealthChoice plan, that should be a specific exclusion in the policy and/or rules. There are 58 exclusions and limitations identified in the policy and 19 identified in the rules. We will not read an additional exclusion into the policy or rules.

¶13 The final agency order denying certification is reversed and the case is remanded to the OMES EGID Grievance Panel with instructions to enter a final order granting certification.

¶14 REVERSED AND REMANDED WITH INSTRUCTIONS.

BELL, J., and SWINTON, J., concur.

FOOTNOTES

[1] HealthChoice and Defendants do not dispute medical necessity or compliance with certification.

[2] At the Grievance Panel Hearing, Dr. Frank Lawler, the Medical Director for EGID, testified on behalf of OMES. He explained the agency's intent to cover complications, including revision surgery, only if the Plan covered the previous bariatric procedure. We have determined the contract language is unambiguous and, therefore, this is impermissible extrinsic evidence. "In the absence of accident, fraud, or mistake of fact, when the language of a written contract is complete, unambiguous and free from uncertainty as to the parties' intentions, parole evidence of prior representations, contemporaneous agreements or understandings tending to change, contradict, or enlarge the plain terms of the written contract are inadmissible." First Nat. Bank and Trust Co. of Vinita v. Kissee, 1993 OK 96, ¶13, 859 P.2d 502 (footnote omitted).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 2, 824 P.2d 1132, 63 OBJ 278, Flitton v. Equity Fire and Cas. Co.
Discussed
 1993 OK 96, 859 P.2d 502, 64 OBJ 2159, First Nat. Bank and Trust Co. of Vinita v. Kissee
Discussed
 2004 OK 9, 89 P.3d 1051, AMERICAN ECONOMY INSURANCE COMPANY v. BOGDAHN
Discussed
 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed at Length
 1974 OK 147, 534 P.2d 1293, WILEY v. TRAVELERS INSURANCE COMPANY
Discussed at Length
 1985 OK 38, 706 P.2d 523, Mercury Inv. Co. v. F.W. Woolworth Co.
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 154, Language of Contract Governs
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - Affirmance
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA