**PAUL HARDEMAN, INC., Plaintiff in Error,**

**v.**

**UNITED STATES FIDELITY & GUARAN-TY COMPANY, Defendant in Error.**

**No. 42642.**

Supreme Court of Oklahoma.

May 25, 1971.

As Corrected June 14, 1971.

Rehearing Denied July 20, 1971.

Arnold M. Schwartz, Los Angeles, Cal. and Bonds, Matthews & Mason, Muskogee, for plaintiff in error.

Sanders & McElroy, Tulsa, and Andrew Wilcoxen, Muskogee, for defendant in error.

WILLIAMS, Justice:

United States Fidelity and Guaranty Company, defendant in error herein, filed suit in the trial court pursuant to this State's declaratory judgment act, 12 O.S. 1961, § 1651 et seq., seeking a determination that Paul Hardeman, Inc., plaintiff in error, had breached a contract entered into by Hardeman and Dearborn Machinery Movers Company, Inc. and as a result of this breach had become indebted to U. S. F. & G. for certain sums expended in an attempt to perform the contract.

The contract in question was executed in January, 1962. It covered certain work to be performed on the powerhouse at the Eufaula Dam Project, Porum, Oklahoma. Hardeman previously had contracted with the U. S. Army, Corps of Engineers, to construct the powerhouse and by the contract involved in this controversy subcontracted a portion of the work to Dearborn. U. S. F. & G., as surety, with Dearborn as principal and Hardeman as obligee, executed and delivered a performance bond and a labor and material payment bond covering the Hardeman-Dearborn contract.

Hardeman and Dearborn began work on the powerhouse in May, 1962. On August 16, 1962, in the midst of the construction work, a petition seeking the reorganization of Dearborn under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq., was filed in the United States District Court for the Eastern District of Michigan. One week after the reorganization petition was filed, U. S. F. & G. sent Hardeman the following telegram:

"RE: DEARBORN MACHINERY MOVERS BOND # 12–327–62 CONTRACT DA 34–066 CIVEG 62–1308 PROJECT NO. MU 3429 BECAUSE OF PETITION FILED IN BANKRUPTCY COURT BY DMM THE SURETY U. S. F. & G. REQUESTS THAT ALL FURTHER PAYMENTS BE HELD BY YOU OR SENT TO U. S. F. & G. 415 GRISWOLD DETROIT 26 MICH. ANY PAYMENTS NOT SO HELD OR DIRECTED WILL BE AT YOUR OWN PERIL. LETTER FOLLOWS."

At the time of the receipt of this telegram, Hardeman had received (in July) but had not yet paid an invoice for work performed by Dearborn. Pursuant to further communications between Hardeman and U. S. F. & G., Hardeman, on September 6, 1962, paid to U. S. F. & G. the amount due Dearborn on the July invoice. At the time of these communications concerning the July invoice, the following letters, in applicable part, were exchanged:

From U. S. F. & G. to Hardeman, dated September 4, 1962 ——

* &ast; &ast; &ast; &ast; &ast;

"Please be advised that the United States Fidelity Company, in exchange for your making certain requested advances to the payroll account of Dearborn Machinery Movers Company, Inc., agrees to hold your company harmless from any action that might be taken against you because of ·these advances at our request.

"Also, it is expressly understood that any advances made at our request to continue this job until such time as an agreement can be worked out between the United States Fidelity and Guaranty Company and the Trustees for Dearborn Machinery Movers Company, Inc. will not be considered to be a waiver of any rights that the Paul Hardeman, Inc. has under our Bond No. 35283–12–372–62, covering performance in the amount of $270,000.00 and labor and material in the amount of $270,000.00."

From Hardeman to U. S. F. & G. dated September 6, 1962—

" &ast; &ast; &ast; Until further notice from you, or other event to the contrary, payments to be disbursed under our Subcontract with your principal will be forwarded directly to you and you will make such disbursements therefrom as you deem proper.

"This procedure is not to be in waiver of any of our rights under the bond you have posted on behalf of &ast; &ast; &ast; [Dearborn and U. S. F. & G. agrees unequivocally to hold Hardeman] harmless from any claim, liability and expense arising from the release of monies to United States Fidelity and Guaranty Company under this procedure.

"We have received your telegram confirming this procedure and accordingly we transmit to you our check No. 66562 in the amount of $15,478.83, payable to your order and as full and final payment of Dearborn Machinery Movers Company, Inc.'s Invoice No. 88281."

Section 116(1) of Chapter X, Bankruptcy Act, 11 U.S.C. § 516(1), provides that upon the approval of a reorganization petition, a judge may permit the rejection of executory contracts of the debtor. Pursuant to this authority, the U. S. District Court, in the reorganization proceedings, entered its order approving the rejection and abandonment of the Hardeman-Dearborn contract. In this order, the Court noted that U. S. F. & G. was present in court and was prepared to take over the contract pursuant to its rights as surety upon the bonds.

Under the terms of the performance bond issued by U. S. F. & G., if Hardeman assumed responsibility for the completion of the subcontract, surety would reimburse Hardeman for all reasonable completion costs expended above the original subcontract price not to exceed the face amount of such bond. If the surety itself assumed responsibility for the completion of the subcontract, it would receive from Hardeman the original contract price due less amounts previously paid Dearborn.

In October, 1962, U. S. F. & G. sent an employee in its Oklahoma City office, Edgar W. Adams, to inspect the powerhouse project at Porum. The purpose of this inspection, Adams testified, was to determine whether U. S. F. & G. would continue work with the Dearborn employees or would retain another contractor to complete the work. Adams stated he informed representatives of Hardeman that U. S. F. & G. recognized its liability on the bond and would finance the completion of the subcontract. Although Dearborn's work

force thereafter was continued on the project, Adams further testified that they remained employees of Dearborn, the project was not taken over by U. S. F. & G. at any time, and the project continued to be supervised by Dearborn's office in Detroit.

In addition to an invoice received prior to the rejection of the contract, Hardeman received invoices in September and October. All of these invoices were on the letterhead of Dearborn. After the alleged termination of the contract in November, 1962, the invoices sent Hardeman were on the letterhead of U. S. F. & G. Apparently, on no occasion in the time interval between the rejection of the contract by the Trustee of Dearborn and the alleged termination of the contract did U. S. F. & G. make a request or demand that Hardeman pay to them the amounts due under the invoices Hardeman had received from Dearborn.

On November 13, 1962, Hardeman informed U. S. F. & G. that E. J. Bradley, Dearborn's superintendent at the powerhouse project who had continued in that capacity after the Trustee's rejection of the contract, no longer had Hardeman's continued approval and requested he be replaced as provided in clause 13(d) of the Dearborn subcontract. Clause 13(d) provides:

"All supervisory personnel of Subcontractor assigned to the job will be subject to the continuing approval of Contractor. All such personnel not approved by Contractor will be replaced by Subcontractor upon request made by Contractor, and any failure to make such replacement forthwith upon request made will, at the election of Contractor, be deemed a failure to perform and Contractor may proceed under 21 hereof."

In summary, paragraph 21 provides that if the subcontractor fails to perform any term, covenant or condition in the contract, contractor may remove subcontractor and take over prosecution of the work without forfeiting any rights contractor may have against the subcontractor or his surety.

On November 15, 1962, Hardeman sent U. S. F. & G. another telegram. After quoting the above provisions of paragraph 13(d) of the Hardeman-Dearborn contract, the telegram continued in the following language:

"YOUR CONTINUED FAILURE TO COMPLY WITH OUR VERBAL & CONFIRMING TELEGRAM TO REPLACE BRADLEY WILL BE CONSIDERED A BREACH OF THE CONTRACT FOR WHICH YOU ARE NOW RESPONSIBLE. BY CONTINUED FAILURE, WE MEAN YOUR FAILURE TO HAVE TAKEN POSITIVE ACTION IN THIS MATTER BY 12 NOON ON FRIDAY, 11–16–62. NOTHING IN THIS WIRE SHALL CONSTITUTE A WAIVER OF PAUL HARDEMAN'S RIGHTS UNDER THE TERMS OF OUR CONTRACT NO. 811 WITH DMM OR YOUR BOND NO. 35283–12–327–62."

Bradley, Dearborn's superintendent at the project, testified he received a telephone call on the afternoon of November 16, from a Jim Myers, executive vice-president of Dearborn, informing him (Bradley) Dearborn was abandoning the Hardeman contract. After receiving the telephone call, Bradley secured Dearborn's equipment and did no further work on the project. The work under the Dearborn contract was completed by Hardeman.

Subsequently, U. S. F. & G. brought this suit in the district court. As stated above, U. S. F. & G. sought a determination Hardeman had breached the Dearborn contract and a judgment requiring Hardeman to reimburse U. S. F. & G. for all sums expended during the period the surety attempted to ·continue Dearborn's work. Hardeman denied breaching the contract and filed a cross-petition alleging a breach of the contract by Dearborn and U. S. F. & G. and sought reimbursal of the amount Hardeman had expended in the completion of the Dearborn contract.

At the completion of the trial, the court entered judgment for U. S. F. & G. in the

amount of $100,339.06. In its findings of fact and conclusions of law the court found that Hardeman's failure to pay the Dearborn invoices rendered in August, September and October of 1962, within the time period specified in the contract was a breach of the contract; that Hardeman, having committed the first substantial breach of the contract, could not rescind or terminate the contract because of the refusal of U. S. F. &. G. to replace Bradley; and, that U. S. F. & G. was entitled to recover in quantum meruit for the value of the work performed prior to the termination of the contract.

 As noted above, the Hardeman subcontract had been abandoned and rejected by Dearborn's trustee pursuant to 116(1) of Chapter X, Bankruptcy Act. This rejection constituted an "anticipatory breach" of the contract. Workman v. Harrison, 282 F.2d 693 (10th Cir. 1960); Collier on Bankruptcy, 14th Ed., Vol. 6 § 3.24, p. 592. U. S. F. & G. contends that in the instant case, there was no breach by Dearborn or U. S. F. & G. as there was no interruption in the prosecution of the work. However, this contention does not take into consideration that trustee's rejection constituted a breach of the contract as a *matter of law*. Workman v. Harrison, supra.

On appeal, Hardeman contends the trial court erred in its conclusions of law in holding that Hardeman's failure to pay three installments at the times specified in the construction contract constituted a breach of the contract. Although the trial court's conclusion may well be a correct statement of the law, see Clements v. Jackson County Oil & Gas Co., 61 Okl. 247, 161 P. 216 (1916), it is our opinion the rule does not apply to the situation involved herein.

As discussed earlier, the Hardeman-Dearborn subcontract had been breached by its rejection and abandonment by the trustee of Dearborn. Prior to the aban-donment of the contract but subsequent to the commencing of the reorganization proceedings, U. S. F. & G. had requested Hardeman not to pay to Dearborn any further funds due under the contract. Rather, Hardeman was either to retain the funds or pay them to U. S. F. & G. Thereafter, U. S. F. & G. specifically requested funds due Dearborn for the July invoice be forwarded to U. S. F. & G. and agreed in their request to hold Hardeman harmless for the release of the funds. Subsequent to the rejection of the contract, U. S. F. & G. made no further request that the funds due Dearborn be released to U. S. F. & G. The invoices sent Hardeman after the rejection of the contract were prepared and mailed from Dearborn's Detroit office. It is clear the supervision of the contract work remained with Dearborn's personnel. There is no evidence in the record to indicate that U. S. F. & G. ever gave any notification to Hardeman that it had taken over the contract. Rather, the only evidence concerning this point is the order entered by the U. S. District Court wherein it was stated that U. S. F. & G. was prepared to take over the prosecution of the contract.

 In our opinion, in the absence of an unequivocal communication notifying Hardeman that U. S. F. & G. was taking over the work under the contract and requesting that all funds due under the contract be paid U. S. F. & G., Hardeman did not breach the contract by withholding payment of the three invoices received from Dearborn after the filing of the reorganization proceeding.

U. S. F. & G. further contends Hardeman, under paragraph 13(d) of the contract, could not demand the removal of Bradley without stating some reasonable ground. U. S. F. & G. argues that as no such reasonable ground was given, Hardeman could not terminate the contract under paragraph 21.

 This Court has previously held that the language of a written contract, the

terms of which are clear and unambiguous, governs the obligations of the contracting parties and that a court, in construing the contract, cannot supply or read into its provisions words or terms it does not contain. Meeks v. Harmon, 207 Okl. 459, 250 P.2d 203(19); Cities Service Oil Co. v. Geolograph Co., 208 Okl. 179, 254 P.2d 775 (1953). In the instant case, the provisions of paragraph 13(d) clearly provide that supervisory personnel of the subcontractor were subject to the continuing approval of Hardeman and upon request would be replaced when approval was withdrawn. The contractual language did not require Hardeman to give reasons for its request. It is obvious the parties considered this paragraph important as a failure to comply with the request was specifically made a ground to terminate the contract. In our opinion, the clear and unambiguous language of paragraph 13(d) did not require Hardeman to have "reasonable ground" upon which to base a request to replace supervisory personnel. See our opinion in the companion case of Hardeman v. Bradley, Okl., 486 P.2d 731, this date decided.

From the record herein, this Court cannot determine an amount which would represent Hardeman's reasonable costs expended in completing the Dearborn contract, even if we were inclined to do so in a declaratory judgment action. Therefore, the judgment of the trial court is reversed and cause remanded to the trial court for further proceedings to determine the reasonable costs expended by Hardeman to complete the contract and the amount for which U. S. F. & G. is liable under the provisions of the bond.

Judgment reversed .and cause remanded.

BERRY, C. J., DAVISON, V. C. J., and BLACKBIRD and HODGES, JJ., concur.

LAVENDER, J., concurs in result.

IRWIN, J., dissents.