2007 OK CIV APP 117

### SENTCO CONSTRUCTION CO., Plaintiff/Appellant,

v.

### The ROSS GROUP CONSTRUCTION CORPORATION, Defendant/Appellee.

### No. 103,476.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 29, 2007.

Rehearing Denied Sept. 14, 2007.

Certiorari Denied Nov. 19, 2007.

Mathew C. Goodin, Neal P. McGuffee, McGuffee & Goodin, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

John E. Harper, Jr., Barrow & Grimm, P.C., Tulsa, OK, for Defendant/Appellee.

DOUG GABBARD II, Presiding Judge.

¶ 1 Plaintiff, Sentco Construction Co., appeals a summary judgment order granted in favor of Defendant, The Ross Group Construction Corporation. We affirm.

## FACTS

¶ 2 Defendant entered into a contract with the United States Government to construct certain structures at Tinker Air Force Base in Midwest City. Defendant and Plaintiff entered into a subcontract, whereby Plaintiff agreed to pour and finish concrete for a basketball court at the base. The written contract contained a provision that:

> [A]ll work shall be performed by skilled and reputable mechanics, artisans, and laborers satisfactory to The Ross Group, and the work to be performed shall fully comply with the aforesaid Contract Documents, and shall meet the approval and acceptance of The Ross Group, the Architect or other representative or agent of the Owner designated in the Contract Documents.

¶ 3 Plaintiff began work on the project. On the day that the concrete was poured and finished, the parties and the United States Government representative had a dispute regarding whether the delivered concrete met contract specifications. The dispute arose when the second batch of concrete was delivered and did not appear to meet slump and

air requirements. An on-site Government inspector notified Plaintiff that the concrete being used did not meet plan specifications and that pouring should halt. Plaintiff, after contacting the cement plant, elected to finish the pour. Plaintiff claims that on-site testing of the fourth and final batch indicated that the concrete met plan specifications

¶ 4 Two days after the pour, the Government and Defendant again notified Plaintiff that the concrete was unacceptable. They requested that Plaintiff immediately remove the concrete and repour at no additional cost to the Government. Plaintiff requested additional time to conduct core testing of the concrete pad in order to prove that the concrete was satisfactory. This request was refused. Plaintiff complied with the requests, removed the concrete, and completed construction.

¶ 5 Plaintiff then filed suit against Defendant, alleging that core testing indicated that the original concrete met contract specifications, that Plaintiff was unreasonably required to remove and replace this concrete, and that Plaintiff should be reimbursed approximately $20,000 for the extra work. Defendant filed its answer and then sought summary judgment, asserting that the contract required Plaintiff to "meet the approval and acceptance" of both Defendant and the Government, and that Plaintiff did not do so. Plaintiff responded that this provision required both the Defendant and the Government to act "reasonably," and had they done so, removal would have been unnecessary since additional testing revealed that the original concrete met specifications.

¶ 6 The trial court granted summary judgment to Defendant. Plaintiff now appeals.

## STANDARD OF REVIEW

¶ 7 Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, *Indiana Nat'l Bank v. Dep't of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59; and where one party is entitled to judgment as a matter of law. *Sellers v. Okla. Pub. Co.*, 1984 OK 11, ¶ 23, 687 P.2d 116, 120. We review a grant of summary judgment *de novo*. *Young v.*

*Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a *de novo* review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law. *Id.*

## ANALYSIS

¶ 8 In interpreting contracts, courts will not make over a written legal contract, nor enlarge or diminish rights or liabilities clearly and specifically provided therein. *Perry Journal Co. v. Shaw*, 1951 OK 135, ¶ 0, 204 Okla. 479, 231 P.2d 369 (syllabus of the court # 1). Here, the contract clearly provides that Plaintiff's work "shall fully comply with the aforesaid Contract Documents, and shall meet the approval and acceptance of" both Defendant and the Government.

¶ 9 Contract terms conditioning performance upon the chief contractor or owner's satisfaction have generally been upheld by courts. However, such terms are subject to judicial review. Generally, courts have measured the right to disapprove by either an objective standard (a reasonable person in the owner's position would have been dissatisfied) or a subjective standard (the owner's claim of dissatisfaction must have been made in good faith). 13 Am.Jur.2d *Building and Construction Contracts* § 34 (2000); R.D. Hursh, Annotation, *Construction and Effect of Provision in Private Building and Construction Contract That Work Must be Done to Satisfaction of Owner*, 44 A.L.R.2d 1114 (1955).

¶ 10 In *Paul Hardeman, Inc. v. United States Fidelity & Guaranty Co.*, 1971 OK 70, 486 P.2d 726, a contract between a contractor and subcontractor contained a similar provision:

All supervisory personnel of Subcontractor assigned to the job will be subject to the continuing approval of Contractor. All such personnel not approved by Contractor will be replaced by Subcontractor upon request made by Contractor, and any failure to make such replacement forthwith upon request made will, at the election of Contractor, be deemed a failure to perform....

*Id.* at ¶ 11, 486 P.2d at 729. After construction began, the subcontractor filed for bankruptcy. The bankruptcy trustee notified the contractor that it was rejecting the subcontract. The subcontractor's surety company, USF & G, requested permission from the bankruptcy court to assume responsibility for completion of the subcontract. The court granted permission. USF & G allowed the subcontractor's employees to continue construction and billing in the subcontractor's name, but did not notify the contractor that it had assumed the subcontract. The contractor refused to pay, requested that the subcontractor's superintendent be replaced, terminated the subcontract, and completed the work at its own expense. USF & G sued, and the contractor filed a cross-petition for breach of contract. On appeal, the Oklahoma Supreme Court noted that USF & G had never given any notification to the contractor that it had taken over the subcontract, that the contract provision requiring approval of all personnel did not require the contractor to have a "reasonable ground" upon which to base a request to replace supervisory personnel, and, therefore, the contractor was entitled to judgment.

■ ¶ 11 We find that Oklahoma courts apply the subjective, or "good faith," standard, and not the reasonable person standard, to contract approval provisions. Thus, when performance of a subcontract is contingent upon the approval of the contractor or owner, the contractor or owner's dissatisfaction must be based upon an honest, good faith reason, and there is no requirement to act as a reasonable person would have acted under the same or similar circumstances.

■ ¶ 12 Whether disapproval is made in good faith is usually a question of fact for a jury to determine. However, this case presents no substantial controversy. The evidentiary material indicates that on the morning of the pour, four trucks delivered the concrete. The Government's on-site inspector observed the concrete being poured, tested concrete from the second truck, determined that it had a 7 1/4″ slump and 1.8% air entrainment (which was not in accordance with the project's specifications), and orally notified Plaintiff of its noncompliance. In spite of being notified of the Government's position, Plaintiff continued the pour, and then claimed that it was in compliance because the concrete from the last truck tested met specifications. While the available evidence in existence at the time of disapproval may have been conflicting, we find as a matter of law and fact that the Government and Defendant had a good faith basis at that time for disapproving Plaintiff's work. Even if a reasonable person would have granted Plaintiff additional time to core test to determine if the original on-site tests were accurate, this is not the standard for measuring disapproval adopted by the Oklahoma Supreme Court.

## CONCLUSION

¶ 13 Accordingly, we find that the trial court correctly found that no substantial controversy existed and that summary judgment was appropriate. We affirm.

¶ 14 AFFIRMED.

RAPP, V.C.J., and REIF, J., concur.