2011 OK 45

**Camran DURHAM, Plaintiff/Appellant,**

v.

**MCDONALD'S RESTAURANTS OF OKLAHOMA, INC., an Oklahoma Corp., Defendant/Appellee.**

**No. 108,193.**

Supreme Court of Oklahoma.

May 24, 2011.

Stephen J. Modovsky, Sidney A. Martin, Modovsky Law Office, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Matthew C. Kane, Ryan Whaley Coldiron Shandy, PLLC, Oklahoma City, Oklahoma, for Defendant/Appellee.

REIF, J.:

¶ 1 This case concerns a summary judgment granted to defendant McDonald's Restaurants of Oklahoma, Inc., on a claim for intentional infliction of emotional distress filed by former employee, Camran Durham. Plaintiff Durham alleged that his supervising manager denied three requests to take prescription anti-seizure medication and called plaintiff a "f...ing retard" in the course of denying the last request. Plaintiff related that he was sixteen at the time and the manager's refusals caused him to fear he would suffer a seizure. He stated he left work crying and did not return. These events allegedly occurred on June 1, 2006.

¶ 2 McDonald's did not controvert plaintiff's account of this incident on summary judgment. Instead, McDonald's argued that the manager's conduct was not "extreme and outrageous" conduct required for a claim for intentional infliction of emotional distress. McDonald's relied on an earlier federal court disposition of claims made by plaintiff under the Americans with Disabilities Act. In denying plaintiff recovery on the ADA claims, the federal court determined that the manager's conduct was "not severe."

¶ 3 The trial court concluded that the federal court disposition constituted an adverse preclusive determination of the "extreme and outrageous" element of plaintiff's claim for intentional infliction of emotional distress. The Court of Civil Appeals agreed and affirmed. For the reasons that follow, we disagree, vacate the Court of Civil Appeals opinion and reverse the summary judgment.

## I.

¶ 4 In order to prove the tort of intentional infliction of emotional distress or outrage, a plaintiff must prove each of the following elements: 1) the alleged tortfeasor acted intentionally or recklessly; 2) the alleged tortfeasor's conduct was extreme and outrageous; 3) the conduct caused the plaintiff emotional distress; and 4) the emotional distress was severe. *Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. In the case at hand, McDonald's has argued that the federal court adjudicated the second and fourth elements of the tort, and, therefore, Plaintiff's claim is barred by issue preclusion.

¶ 5 Issue preclusion prevents relitigation of facts and issues actually litigated and *necessarily determined* in an earlier proceeding between the same parties or their privies. *Nealis v. Baird*, 1999 OK 98, ¶ 51, 996 P.2d 438, 458. Under the doctrine, once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. *Miller v. Miller*, 1998 OK 24, ¶ 25, 956 P.2d 887, 897. To establish issue preclusion, a party must prove: 1) that the party against whom it is being asserted was either a party

to or a privy of a party to the prior action; 2) that the issue subject to preclusion has actually been adjudicated in the prior case; 3) that the adjudicated issue was *necessary and essential to the outcome* of that prior case; and 4) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue. *State ex rel. Tal v. City of Okla. City*, 2002 OK 97, ¶ 20, 61 P.3d 234, 245.

■ ¶ 6 The Court of Civil Appeals found that the federal court had necessarily determined that the manager's conduct was "not severe" in disposing of the federal ADA claims. Noting that Black's Law Dictionary 1233 (5th ed. 1979) treats "extreme" as a synonym for "severe," the Court of Civil Appeals drew the logical conclusion that conduct which is not severe cannot be "extreme and outrageous" under the applicable law.[1]

¶ 7 The chief problem we have with this analysis is that it was not necessary for the federal court to make any determination about the character of the manager's conduct in disposing of the federal litigation. All of plaintiff's claims under the Americans with Disabilities Act, including the hostile working environment and constructive discharge claim, were dependent upon plaintiff's status as a "disabled person." The federal court determined the *plaintiff was not a disabled person.*

■ ¶ 8 Plaintiff's status as a disabled person was the linchpin of federal question jurisdiction and the determination of this issue adversely to plaintiff ended the court's jurisdiction to decide any other issue concerning the ADA claims.[2] Simply "assuming" this status, as the federal court did, does not give the court power to rule on any other matter affecting the parties. The Court of Civil Appeals erred in ruling that the federal court disposition of the ADA claims was preclusive of the extreme and outrageous element of plaintiff's claim for intentional infliction of emotional distress.

■ ¶ 9 When this Court reviews a claim for intentional infliction of emotional distress that has been rejected by the Court of Civil Appeals, we will make the "gatekeeper" or threshold determination of whether the defendant's conduct may reasonably be regarded as extreme and outrageous. *Miller*, 1998 OK 24 at ¶¶ 32–37, 956 P.2d at 899–902. The test is whether the conduct is so extreme in degree as to go beyond all possible bounds of decency, and is atrocious and utterly intolerable in a civilized community. *Id.* at ¶ 33, 956 P.2d at 901. In the case at hand, we find that the manager's use of "f. . .ing retard" in addressing a minor employee who is filled with apprehension after being denied permission to take anti-seizure medication may reasonably be regarded as meeting this test. *Id.* at ¶ 37, 956 P.2d at 902. We further find that reasonable people might differ on this issue, but could nonetheless similarly conclude that such conduct meets the test of extreme and outrageous. *Id.* at ¶ 34, 956 P.2d at 901. Where this threshold is satisfied, the issue of whether a defendant's conduct is extreme and outra-

1. "Extreme and outrageous" conduct, requires the existence of conduct so extreme in degree as to go beyond all possible bounds of decency, and which is viewed as atrocious and utterly intolerable in a civilized community. *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 1996 OK 141, ¶ 15, 916 P.2d 241, n. 25. In general, a defendant's conduct must be such that an average member of the community would exclaim, "Outrageous!" *Computer Publications*, 2002 OK 50 at ¶ 9, 49 P.3d at 735.

2. Federal question jurisdiction involves a claim "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (1976). To establish federal question jurisdiction, a federally created right or immunity must be an essential element of a plaintiff's cause of action. *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The ADA prohibits employers from discriminating against individuals on the basis of disability. *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir.2000). To maintain a claim under the ADA, a plaintiff must be "a disabled person as defined by the ADA." *Id.* "Disability is a term of art under the ADA . . . defin[ing] disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* A federal court lacks subject matter jurisdiction under the ADA where the plaintiff's alleged disability is not covered by the ADA. *Ankus v. GEICO Insurance Co.*, 69 Fed.Appx. 770, 2003 WL 21461849 (7th Cir.2003).

geous is for a jury to decide. *Id.* at ¶¶ 34–37, 956 P.2d at 901–02.

## II.

¶ 10 In its motion for summary judgment, McDonald's also asserted that plaintiff cannot prove the severe emotional distress element of intentional infliction of emotional distress. The motion pointed out that the trial court could make the "gatekeeper" or threshold determination concerning this element based on the federal court disposition of the ADA claims. In granting the motion, the trial court generally ruled that "Issue preclusion prevents Plaintiff from relitigating ... the fact issue [that] (Plaintiff admitted the conduct was 'no big deal')."

¶ 11 On appeal, the Court of Civil Appeals concluded that the trial court regarded this "fact issue" as dispositive of the severe emotional distress element of the tort. In its independent review of the federal court disposition, however, the Court of Civil Appeals found the *federal court did not determine* whether plaintiff suffered severe emotional distress. The Court of Civil Appeals ruled "the [trial] court erred in applying issue preclusion to the [severe emotional distress] element of the tort of outrage."

¶ 12 The Court of Civil Appeals also ruled summary judgment was not properly granted on the extreme emotional distress element of the tort, finding the existence of a "substantial controversy on that very issue." Our review of plaintiff's evidentiary materials leads us to the same conclusion.

¶ 13 Intentional infliction of emotional distress does not provide redress for every invasion of emotional serenity or every anti-social act that may produce hurt feelings. *Id.* at ¶ 33, 956 P.2d at 900. While emotional distress can include all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea, it must be so severe that no reasonable person could be expected to endure it. *Computer Publications*, 2002 OK 50 at ¶ 13, 49 P.3d at 736. The intensity and duration of the distress are factors to be considered in determining severity, but the type of distress must be reasonable and justified under the circumstances. *Id.* It is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. *Id.* at ¶ 8, 49 P.3d at 735.

¶ 14 Although the Court of Civil Appeals concluded that there was a "substantial controversy" concerning the severity of plaintiff's emotional distress, the Court of Civil Appeals did not perform a "gatekeeper" assessment of the evidentiary materials. This omission leaves that task for this Court to perform.

¶ 15 At the time the manager refused permission to take the anti-seizure medicine, plaintiff Durham related he "was getting scared he might die [or] he could bite off his tongue or fall and hurt himself." After the manager called him a "f ... ing retard," plaintiff ran out the door crying. As a consequence of this treatment, plaintiff Durham stated he became "withdrawn" and "a recluse." He recounted that "[h]e felt he couldn't do anything [and] was afraid he would suffer the same experience at another job." His mother related he "wouldn't go outside, slept all day and had to be home schooled." She stated he "became depressed and introverted." She reported "he was no longer active [and] lost interest in everything." Plaintiff believed a school friend who worked at McDonald's told other school friends about the incident and they began calling plaintiff a "f...ing retard" and teased him by saying, "I hear you can't even keep a job at McDonald's because you're a f...ing retard."

¶ 16 Viewing the evidentiary materials in a light most favorable to plaintiff Durham,[3] we hold that the "highly unpleasant mental reactions" that plaintiff Durham and his mother described are reasonable and justified under the circumstances. *Id.* at ¶ 13, 49 P.3d at 736. We also hold they go beyond mere hurt feelings, insult, indignity, and annoyance and could be reasonably regarded to constitute emotional distress so severe that no reasonable person could be expected to endure it.

---

3. *Manley v. Brown*, 1999 OK 79, ¶ 22, 989 P.2d 448, 455.

In such cases, "[i]t is for the jury to determine whether, on the evidence, severe emotional distress in fact existed." *Id.* at ¶ 8, 49 P.3d at 735.

¶ 17 Based on the foregoing, we hold the trial court erred in granting summary judgment in favor of defendant McDonald's Restaurants of Oklahoma, Inc., on plaintiff's claim for intentional infliction of emotional distress.[4] Accordingly, we reverse the summary judgment and remand for further proceedings.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; SUMMARY JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

¶ 18 COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, and GURICH, JJ., concur.

¶ 19 TAYLOR, C.J., WINCHESTER, and COMBS, JJ., dissent.

4. If a reasonable person might reach a different conclusion from the facts than that suggested by the motion for summary judgment, granting summary judgment would be improper. *Copeland v. Tela Corp.,* 1999 OK 81, ¶ 4, 996 P.2d 931, 933.