OSCN Found Document:GLOVER CONSTRUCTION CO., INC. v. STATE ex rel. DEPT. OF TRANSPORTATION

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 GLOVER CONSTRUCTION CO., INC. v. STATE ex rel. DEPT. OF TRANSPORTATION
2014 OK CIV APP 51
Case Number: 109913
Decided: 02/14/2014
Mandate Issued: 05/28/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 51, __ P.3d __

GLOVER CONSTRUCTION COMPANY, INC., Plaintiff/Appellant,
v.
STATE OF OKLAHOMA ex rel., DEPARTMENT OF TRANSPORTATION, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DANIEL L. OWENS, TRIAL JUDGE

AFFIRMED

D.D. Hayes, Hayes Law Office, Muskogee, Oklahoma, and Lou Ann R. Barnes, Bixby, Oklahoma, for Plaintiff/Appellant,
Christopher Allen Barrow, John E. Harper, Jr., Cori D. Powell, Gerald Stamper, Barrow & Grimm, P.C., Tulsa, Oklahoma, for Defendant/Appellee.

Wm. C. Hetherington, Jr., Vice-Chief Judge:

¶1 In the second appeal in this underlying action for breach of a road construction contract,[1] Plaintiff Glover Construction Company, Inc. (GCC) seeks reversal of separate trial court orders. The first order granted the motion for partial summary adjudication filed by the Oklahoma Department of Transportation (ODOT) on the issue of GCC's claim for additional compensation due to ODOT's rejection of its proposed asphalt mix, but denied ODOT's motion on the issue of GCC's claim for additional compensation based on changed site conditions. Following a bench trial on the latter issue, the court entered judgment in favor of ODOT finding GCC failed to comply with the contract's notice requirements for filing such claims. The latter judgment is AFFIRMED. Although based on other grounds, the order granting partial summary adjudication is AFFIRMED.

HISTORY OF THE CASE

¶2 In September 2005, GCC and ODOT entered into a road construction contract (Contract). The Contract required GCC to perform grading, drainage and surface work on U.S. Hwy 59 in Sequoyah County, Oklahoma, and to construct two new lanes along 1.7 miles of the same highway (Project). The Contract incorporates by reference the requirements of the 1999 Standard Specifications for Highway Construction of ODOT's Standard Specifications.

¶3 ODOT subsequently issued a Notice to Proceed on the Project, and GCC commenced work on November 21, 2005, six days after the Governor of Oklahoma had issued a statewide burn ban as a result of extremely dry weather. GCC learned eight or nine days later that the burn ban might affect GCC's plan to burn the already- cleared brush and debris and asked the Resident Engineer to confirm its application to the Project. After GCC learned it was prohibited from burning the debris piles, undisputedly the most economical elimination method, it had to arrange for off-site borrow pits to which the debris piles were transported and buried.

¶4 Following verbal communications, GCC notified Mr. Bond, the Resident Engineer on the Project, by facsimile dated December 19, 2005, that GCC considered the dry conditions at the job site to be a differing site condition, for which extra work GCC would be seeking additional compensation. Mr. Bond responded by letter dated December 20, 2005, stating the dry conditions failed to meet the Contract's criteria for either "differing site condition" or "significant changes in the character of the work."[2]

¶5 GCC's proposed asphalt "mix design" for the Project was subsequently "reviewed" by ODOT's laboratory as required by the Contract,[3] which permitted the use of up to 25% reclaimed asphalt concrete pavement ("RAP") in the mix design.[4] On June 1, 2006, ODOT approved GCC's proposed mix design for the Project, which GCC admits in its Brief "included the US-64 RAP."[5] By letter dated June 23, 2006, however, GCC was informed by ODOT official, Mr. Saliba, that its "records indicate that two (2) mix designs have already been approved. . . both designs include RAP. . . if any portion of the RAP is from the US-64 CIP project the designs are no longer approved." As a result, GCC's plan to begin that part of the Project was delayed.

¶6 Due to the Burn Ban and rejection of its mix design with US 64 RAP, GCC filed a certified claim on August 22, 2006, requesting additional compensation 1) for the hauling work resulting from the dry conditions ("Burn Ban Claim") and 2) for ODOT's rejection of RAP from US 64 ("US 64 RAP Claim"). After GCC's claims were separately denied by the Resident Engineer and ODOT's Director of Operations, the parties met for mediation pursuant to the Contract's Dispute Resolution Procedure. For unknown reasons, the mediation failed. On June 19, 2007, GCC then filed its petition in Oklahoma County District Court alleging breach of contract against ODOT.

¶7 Following GCC's only amendment to its petition and the filing of ODOT's answer, ODOT moved for partial summary adjudication. GCC filed a Response Brief, to which ODOT filed a Reply Brief. Almost two months later, a hearing on the motion was held. By order filed May 26, 2009, the trial court granted summary adjudication on GCC's request for additional compensation for the US 64 RAP Claim, but denied the motion on the Burn Ban Claim. GCC's motion for new trial was overruled. After dismissal of GCC's subsequent appeal, a non-jury trial on the Burn Ban Claim was held. On August 31, 2011, the court filed its Final Journal Entry of Judgment in favor of ODOT, finding that GCC had failed to comply with the Contract's notice requirements for filing claims. GCC appeals both the May 26, 2009 Order and the August 31, 2011 Judgment.

ISSUES ON APPEAL

¶8 In two propositions, GCC argues the partial summary adjudication order should be reversed because 1) the court's decision is based on a new defense raised for the first time in ODOT's reply brief to which new evidentiary materials were attached, 2) the court abused its discretion by refusing to allow GCC to respond to the new argument and evidentiary materials at the motion hearing, and 3) disputed material facts exist concerning the US 64 RAP Claim which preclude summary adjudication. In its third proposition, GCC alleges the trial court's judgment on the Burn Ban Claim is erroneously based on an affirmative defense ODOT raised for the first time ten days before trial, the facts of which had not been previously pleaded or argued, and which had been waived by ODOT.

STANDARD OF REVIEW

¶9 "Summary relief issues stand before us for de novo examination." Manley v. Brown, 1999 OK 79, ¶ 22, 989 P.2d 448. All facts and inferences must be viewed in the light most favorable to the non-moving party. Id. Like the trial court, "appellate tribunals must equally bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." Id. Only if the court should conclude that there is no substantial controversy over any material fact and the law favors the moving party's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor. Id.

¶10 To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action. Akin v. Missouri Pacific R. Co., 1998 OK 102, ¶ 9, 977 P.2d 1040.

¶11 The meaning assigned to a contract by a trial judge is a legal question which is reviewed de novo. May v. Mid-Century Insurance Co., 2006 OK 100, ¶ 22, 151 P.3d 132. When a legal action, such as breach of a contract, is tried to the court after a jury trial has been waived, the court's findings are as binding on appeal as a jury verdict, and if there is any competent evidence to support the findings, they will not be disturbed on appeal. Dismuke v. Cseh, 1992 OK 50, ¶ 7, 830 P.2d 188.

ANALYSIS

Summary Adjudication Of The US 64 RAP Claim

¶12 We address first GCC's abuse of discretion arguments relating to ODOT's Reply Brief and evidentiary materials. In pertinent part, the court expressly found:

[b]ased on the decision of the arbitrators, pursuant to the dispute resolution provisions of the contract, no material facts are in dispute with respect to Glover's claim that it is entitled to additional compensation due to ODOT's rejection of the use of recycled asphalt from US Highway 64 in Muskogee County, Oklahoma. (Emphasis added.)

¶13 We note the lack of a transcript included in the appellate record for the hearing on ODOT's motion. In light of Hadnot v. Shaw, 1992 OK 21, 826 P.2d 978, and the appellate record, we find no abuse of discretion.

¶14 The appellants in Hadnot v. Shaw similarly argued they were "never accorded an opportunity to respond" to the reply brief filed by the moving party for summary judgment and the brief raised issues "not tendered in the original motion." Id., 1992 OK 21, ¶ 14. The Supreme Court declined to review the issue of the court's consideration of the reply brief because the appellants had never raised the issue to the court. Noting the reply brief had been filed "five days before the motion was reached" and the appellants "had ample opportunity to seek additional time to prepare a written response and to use the issue now pressed as a reason for their request" (emphasis added), the Court stated, "[t]hey failed to do so and cannot complain here of error." Id.

¶15 The Court in Hadnot v. Shaw, after explaining the court's "statement of uncontroverted facts only had one undisputed fact neither tendered in the original motion nor revealed by the evidentiary material" and that fact "stood conceded by [the appellants'] attorney during the summary judgment argument," held "the trial court's consideration of the [moving party's] reply, even if error, was at best harmless under these circumstances." Id., 1992 OK 21, ¶ 16. As we interpret Hadnot v. Shaw, a reply brief by the moving party is permitted if the trial court accepts the reply brief and that brief does not raise new issues or arguments.[6]

¶16 In this case, the record on appeal demonstrates there was almost two months between the filing of ODOT's Reply Brief and the hearing on the motion. During this period according to the certified appearance docket included in the record, GCC did not file a written motion seeking to strike consideration of the Reply Brief or to object to either the "new" defense and/or the admissibility of the evidentiary materials in ODOT's Reply Brief,[7] as permitted by Rule 13(c). The appearance docket further reveals GCC never sought approval to file a response to ODOT's reply brief during that two month period before the motion hearing.

¶17 ODOT raised these deficiencies in its response to GCC's motion for new trial, which alleged an "irregularity in the proceedings . . .or abuse of discretion, by which [it] was prevented from having a fair trial" under 12 O.S. 2001 § 651(1), because "oral argument was prohibited at the hearing and [it] was not allowed to respond to ODOT's new evidentiary material or defense." ODOT further argued its Reply Brief was necessary because by GCC's own admission, it had "vigorously disputed" with supporting evidentiary material ODOT's alleged undisputed fact, i.e., "it had been conclusively determined that the US 64 RAP did not meet the Contract Specifications for this Project." Without explanation of its reason(s), the trial court denied GCC's motion for new trial.

¶18 Clearly the trial court had authority under Rule13(f) of the Rules of the District Courts of Oklahoma, 12 O.S. Supp 2002, Ch. 2, App., to decide summary judgment or summary disposition without a hearing. As we view it, ODOT's Reply Brief merely clarifies its originally-tendered defense and supports the same with evidentiary material. Because GCC failed to object to the so-called newly-raised defenses and evidentiary material submitted in ODOT's Reply Brief or to seek approval to respond to that brief during the two months before the hearing, we find no abuse of discretion in the court's consideration of the Reply Brief and that GCC's own omissions prevented it from having an opportunity to respond to ODOT's Reply Brief.

Does The Arbitration Award Alone Support Summary Adjudication?

¶19 GCC denies the existence of any arbitrator decision regarding the Contract in this case. It claims the Final Arbitration Award[8] on which the court solely based partial summary adjudication, resulted from another unrelated case between the parties which is not "binding" on this case and did not decide any issue or fact concerning GCC's entitlement to additional compensation based on ODOT's rejection of the US-64 RAP in this case.

¶20 ODOT's summary judgment argument, although not identified by either party as such, clearly raises the affirmative defense of "issue preclusion," which must be pleaded and proved. Nealis v. Baird, 1999 OK 98, ¶ 51, 996 P.2d 438. Under the doctrine of issue preclusion, once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. Miller v. Miller, 1998 OK 24, ¶ 25, 956 P.2d 887. To establish issue preclusion, a party must prove: 1) that the party against whom it is being asserted was either a party to or a privy of a party to the prior action; 2) that the issue subject to preclusion has actually been adjudicated in the prior case; 3) that the adjudicated issue was necessary and essential to the outcome of that prior case; and 4) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue. Durham v. McDonald's Restaurants of Oklahoma, Inc., 2011 OK 45, ¶ 5, 256 P.3d 64.

¶21 "The availability of the doctrine of issue preclusion presents a question of law to be reviewed de novo." Wilson v. City of Tulsa, 2004 OK CIV APP 44, ¶ 8, 91 P.3d 673 (relying on Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 14, ¶ 12, 980 P.2d 116. "Whether it applies under the facts presented here calls for an exercise of the trial court's discretion, which we review for abuse of that discretion." Id. "An arbitration award can be the basis for the application of issue preclusion if the other criteria [for issue preclusion] are in place." (Footnote omitted.) Wilson, 2004 OK CIV APP 44, ¶ 9 (relying on Cities Serv. Co, 1999 OK 14, ¶ 16-17).

¶22 ODOT, the moving party on the affirmative defense of issue preclusion, had the burden to demonstrate all four elements of that defense. The Final Arbitration Award attached to its Reply Brief establishes only the first element - the same parties were involved in each case. However, like the arbitration award at issue in Carris v. John R. Thomas and Associates, P.C., 1995 OK 33, ¶ 13, 896 P.2d 522, the Final Arbitration Award refers only to "asphalt" without identifying its source, lacks other material details such relevant dates, project identification, etc., and does not on its face establish the issue in this case was actually litigated and determined in that case.

¶23 "While an appellate court can take judicial notice of its own records in litigation interconnected with a case before it, it cannot take judicial notice of records in other courts." Salazar v. City of Oklahoma City, 1999 OK 20, ¶ 11, 976 P.2d 1056. The preclusive effect of a prior judgment cannot be assessed based solely on the four corners of a journal entry of judgment. Id., ¶ 12. "Those who rely on a judgment for its issue-preclusive force . . . are duty-bound to produce-as proof of its terms, effect and validity-the entire judgment roll for the case which culminated in the decision invoked as a bar to relitigation." (Parenthetical omitted; emphasis added.) Id. "This rule applies whether a favorable decision on the point is sought by summary relief or by trial." (Emphasis added.) Id., n. 12. Based on the evidentiary material submitted to the trial court, ODOT failed to carry its burden on the affirmative defense of issue preclusion. To the extent the trial court's partial summary adjudication may be viewed as concluding the Arbitration Award alone establishes the issue in this case was conclusively adjudicated and determined in the other case between the same parties, such legal conclusion is rejected as a matter of law.

¶24 Even if the trial court improperly granted ODOT's motion based on the Arbitration Award's preclusive effect of the US 64 RAP issue, our inquiry does not stop here. This Court has long held a court's summary adjudication order must stand if correct, even if it is based on the wrong reason. Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept., 2010 OK 9, ¶ 9, 230 P.3d 869; Shelley v. Kiwash Electric Cooperative, Inc., 1996 OK 44, ¶ 16, 914 P.2d 669; G.A. Mosites Company of Fort Worth, Inc. v. Aetna Casualty and Surety Company, 1976 OK 7, ¶ 28, 545 P.2d 746. If properly pleaded and proven by the parties below, alternative grounds for summary judgment which are not addressed by the trial court may be considered as a basis for affirming the trial court.[9] Malicoate v. Standard Life & Accident Ins. Co., 2000 OK CIV APP 37, ¶ 28, 999 P.3d 1103 (relying on Reddell v. Johnson, 1997 OK 86,¶ 7-10, 942 P.2d 200).

¶25 GCC does not contend on appeal that ODOT failed to plead or argue in the original motion its good faith rejection defense, which is premised on GCC's agreement, on the first page of the multi-page Contract, "to build and complete [ODOT Project No. ACSTPY-168A(023)GB] . . .in accordance with the plans on file . . . and with the [ODOT] Standard Specifications] . . . and to the entire satisfaction of [ODOT]." "Contract terms conditioning performance upon the chief contractor or owner's satisfaction have generally been upheld by courts." Sento Construction Company v. Ross Group Construction, 2007 OK CIV APP 117, ¶ 9, 172 P.3d 241. "Oklahoma courts apply the subjective, or 'good faith,' standard, and not the reasonable person standard, to contract approval provisions." Id., ¶ 11 (interpreting Paul Hardeman, Inc. v. United States Fidelity & Guaranty Co., 1971 OK 70, 468 P.2d 726).

¶26 The issue of whether disapproval has been made in good faith is a question of fact for the jury, unless the case presents no substantial controversy. Sento, ¶ 12. Good faith is determined from the available evidence at the time of the disapproval. Id. Although ODOT relied in part on the Arbitration Award's preclusive effect to support it had a "good faith basis" for concluding that the "recycled asphalt at issue was not suitable for use in the Project," such inference is not supported by the evidentiary materials. It is undisputed ODOT's rejection of the US 64 RAP in this case occurred on June 23, 2006, whereas the Final Arbitration Award was not signed until May 19, 2008, almost two years after the rejection. Similarly the email dated November 2006 from the Resident Engineer giving his legal interpretation of the GCC's Contract entitlement to additional compensation, which GCC contends disputes ODOT's good faith basis, is not relevant to ODOT's June 2006 rejection.

¶27 To demonstrate a substantial controversy regarding ODOT's good faith rejection of the proposed mix design with US 69 RAP, GCC attached evidentiary material to its response brief tending to show ODOT had approved the use of US 64 RAP three times in 2004 on other projects by other contractors and again in 2006 by another company, only a month after ODOT had rejected GCC's proposed use of the same. However, ODOT responded by attaching to its Reply Brief an affidavit of an ODOT official, stating ODOT has only approved the use of US 64 RAP in temporary roads, never a permanent road like the one in the Project.

¶28 Further, the prior failure of US Hwy 69 has never been disputed by GCC, and the only reasonable inference from the ODOT's pre-rejection internal emails and its June 23, 2006 letter, which withdrew its approval of GCC's two previously approved mix design if either contained US 64 RAP and stated GCC's use of any other RAP would be approved, is that ODOT had a consistent, good faith basis for disapproving the use of material from a known failed highway. Considering the evidentiary materials submitted to the trial court which are relevant to the time of disapproval by ODOT, we find, like the Court in Sento, that as a matter of law and fact, ODOT had a good faith basis for disapproving GCC's proposed use of the mix design with US 64 RAP. The trial court's order granting partial summary adjudication is affirmed.

GCC's Procedural Argument Relating to the Burn Ban Issue

¶29 In its third proposition, GCC contends the trial court committed reversible error in basing its judgment solely on a "lack of timely notice" defense raised for the first time 10 days before trial, facts of which had not been pleaded or previously argued, and which had been waived by ODOT. This argument fails to consider the Pre-Trial Conference Order (Order) filed December 22, 2010, which establishes ODOT raised the subject defense.[10] Pursuant to Oklahoma District Court Rule 5(I), "[t]he contents of the pretrial order shall supersede the pleadings and govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice." (Emphasis added). This alleged error lacks both record and legal support.

¶30 After review of the record on appeal, we find no reversible error of law and the trial court's findings of fact and conclusions of law adequately explains the decision in its August 31, 2011 Judgment, copy of which is attached. The judgment is AFFIRMED under Okla. Sup.Ct. R. 1.202(d).

JOPLIN, P.J., and BUETTNER, J., concur.

FOOTNOTES

[1] GCC appealed the order granting in part ODOT's motion for partial summary adjudication, Case No. 107,678. The Supreme Court, on its own motion, dismissed the appeal for lack of an appealable order and expressly permitted GCC to raise all issues it had raised in the dismissed appeal upon the filing of a final judgment in the case.

[2] These terms refer to sections within ODOT's Standard Specifications, which were incorporated as part of the Contract, § 104.03 "Differing Site Conditions," and § 104.04, "Significant Changes in the Character of the Work."

[3] Section 708.04(a) of the Contract explains, in pertinent part:

The review of the proposed mix design will be to determine that the mix meets the design criteria . . .The mix design shall be prepared in an approved laboratory of the Contractor's choice. A request for laboratory approval may be made by a Contractor or a Laboratory. Approval will be according to the Materials Division Policy for Asphalt Mix Design Laboratories. The initial job-mix formula shall meet the requirements of Table 5A and 5B and Tables 6A and 6B for the type mix specified on the Plans or in the Proposal. (Emphasis added.)

[4] Pursuant to § 708.04(c), "[b]ituminous mixtures containing up to 25 percent reclaimed asphalt concrete mixture will be accepted provided that the mixture meets all the requirements of these Specifications."

[5] A party's admissions in a brief may be deemed as curing and supplementing a deficient record. Reeves v. Agee, 1989 OK 25, ¶ 15, 769 P.2d 745.

[6] See "Summary Judgment: Some Clarification," which was published February 13, 2001, by then-Vice Chief Judge of the Oklahoma Court of Civil Appeals, John F. Reif (subsequently appointed to the Oklahoma Supreme Court).

[7] The Final Arbitration Award, discussed in further detail in footnote 8, and an affidavit of Darren Saliba, ODOT's Division One Engineer, were attached for the first time to ODOT's Reply Brief. Of the two, only the Arbitration Award relates to the "binding arbitration defense" GCC claims "ODOT did not plead or argue . . .at any other time prior to its Reply Brief." Review of ODOT's Answer to Amended Petition reveals it did not raise issue preclusion (collateral estoppel) or any related affirmative defenses.

[8] The copy of the "Final Arbitration Award" of the "American Arbitration Association", in "Case No.71 110 Y 00528 04," which was signed on "5-19-08," by the Chairman, reads as follows:

We find Claimant [GCC] failed to prove by a preponderance of the evidence that it substantially complied with the terms and conditions of its contract with Respondent [ODOT].

We further find, pursuant to the specifications, terms and conditions of the contract, that [ODOT] acted within its authority in requiring the removal and replacement of the asphalt on this project.

We further find that there is a final contract balance in the amount of $31,410.89 due to [GCC] from [ODOT], therefore [ODOT] shall pay to [GCC] the sum of $31,410.89.

The remaining paragraphs dealt with apportionment of total fees and expenses of the arbitration and attorneys' fee and witness expenses. The Court of Civil Appeals in Glover v. ODOT, 2011 OK CIV APP 62, 259 P.3d 872, when reviewing a court order modifying the administrative disbarment of GCC and Paul Glover, its owner, from participation in state contracts, appears to describe the same arbitration

"ODOT awarded to GCC several highway construction projects located near Muskogee, Poteau, Stigler, and Warner in eastern Oklahoma. In arbitration, GCC sought $3,000,000.00 to recover costs of replacing defective asphalt paving on one of the projects, discovered in 2001 prior to the project's completion in 2003. The arbitrator determined GCC had not substantially complied with its contract with ODOT, awarded about $31,000.00, and the district court confirmed the award." (Emphasis added.) Glover, 2011 OK CIV APP 62, ¶ 2.

The same opinion further explains GCC's indictment for conspiracy to defraud the state arose from "the alleged substitution of unapproved aggregate in the asphalt paving" used in the same projects, id., ¶3, and "in June 2006, ODOT suspended the right of [Glover] and GCC to participate in state contracts." Id., ¶ 4. This is the same month ODOT officials in this case emailed the ODOT lab not to approve any more of GCC's mix designs and wrote GCC informing that if any of its two previously-approved mix designs included RAP from US Hwy 64 those designs would no longer be approved. Additionally, the Court of Civil Appeals explained ODOT had "notified GCC in 1999 that stone from its Onapa quarry was unacceptable and could not be used on the projects," GCC "nevertheless used [such] stone up through 2001 on one or more of the subject projects," and ODOT discovered it in 2003.

[9] We agree with GCC the Sovereign Acts Doctrine does not apply to this case. If the Doctrine applies to States, which we do not decide, it only "operates to insulate the government from liability for certain inabilities to perform contractual obligations," which immunity is afforded only if its performance failure "is the result of legislation targeting a class of contracts to which it is a party." See Resolution Trust Corp. v. Federal Sav. and Loan Ins. Corp., 25 F.3d 1493(10th Cir.1994); Horowitz v. United States, 267 U.S. 458, 461, 45 S.Ct. 344. The Governor's Burn Ban neither targeted ODOT's road construction contract nor made ODOT's performance under the Contract impossible.

[10] Under the "Defendant's Contentions" section of the Order, ODOT listed several "Theories of Defense," including "Plaintiff waived its claim for additional compensation by failing to comply with the notice provisions regarding differing site conditions in the contract" and "Plaintiff failed to comply with the notice provision of the Contract, which is a condition precedent to additional compensation under the Contract." ODOT listed as its authority for both defenses, M.J. Lee v. Oklahoma Turnpike Authority, 2005 OK 87, 125 P.3d 1205, the case on which the trial court relies in its final judgment.

 ATTACHMENT





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2004 OK CIV APP 44, 91 P.3d 673, WILSON v. CITY OF TULSA
Discussed at Length 2007 OK CIV APP 117, 172 P.3d 241, SENTCO CONSTRUCTION CO. v. ROSS GROUP CONSTRUCTION CORP.
Discussed 2011 OK CIV APP 62, 259 P.3d 872, GLOVER v. OKLAHOMA DEPT. OF TRANSPORTATION
Discussed at Length 2000 OK CIV APP 37, 999 P.2d 1103, 71 OBJ 1257, MALICOATE v. STANDARD LIFE & ACCIDENT INSURANCE CO.
Cited
Oklahoma Supreme Court Cases Cite
Name
Level 1989 OK 25, 769 P.2d 745, 60 OBJ 369, Reeves v. Agee
Discussed 1992 OK 21, 826 P.2d 978, 63 OBJ 442, Hadnot v. Shaw
Discussed at Length 1992 OK 50, 830 P.2d 188, 63 OBJ 1289, Dismuke v. Cseh
Discussed 1997 OK 86, 942 P.2d 200, 68 OBJ 2333, REDDELL v. JOHNSON
Discussed 1995 OK 33, 896 P.2d 522, 66 OBJ 1239, Carris v. John R. Thomas and Associates, P.C.
Discussed 1971 OK 70, 486 P.2d 726, PAUL HARDEMAN v. UNITED STATES FIDELITY & GUARANTY CO.
Cited 2005 OK 87, 125 P.3d 1205, M. J. LEE CONSTRUCTION CO. v. OKLA. TRANSPORTATION AUTHORITY
Discussed 1996 OK 44, 914 P.2d 669, 67 OBJ 1190, Shelley v. Kiwash Elec. Cooperative, Inc.
Discussed 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed 2010 OK 9, 230 P.3d 869, MORALES v. CITY OF OKLAHOMA CITY ex rel. OKLAHOMA CITY POLICE DEPT.
Discussed 2011 OK 45, 256 P.3d 64, DURHAM v. MCDONALD'S RESTAURANTS OF OKLAHOMA, INC.
Discussed 1976 OK 7, 545 P.2d 746, G.A. MOSITES CO. OF FT. WORTH v. AETNA CAS. & S.
Discussed 1999 OK 98, 996 P.2d 438, 70 OBJ 3640, Nealis v. Baird
Discussed 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed 1999 OK 14, 980 P.2d 116, 70 OBJ 762, Cities Service Co. v. Gulf Oil Corp.
Discussed at Length 1999 OK 20, 976 P.2d 1056, 70 OBJ 862, Salazar v. City of Oklahoma City
Discussed 1999 OK 79, 989 P.2d 448, 70 OBJ 2752, Manley v. Brown
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 651, New Trial - Definition - Causes for
Cited